THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
RONALD BROWN, Defendant-Appellee.

First District (2nd Division)    No. 79-1789

Opinion filed March 24, 1981.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr and Thomas J. Leanse, Assistant State's Attorneys, of counsel), for the People.

Ralph Ruebner, of State Appellate Defender's Office, of Chicago (James Geis, of Geis & Geis, of counsel), for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Defendant Ronald Brown motioned the trial court to dismiss his indictment for the murder of Tony Williams, alleging post-indictment delay that violated his right to a speedy trial. The trial court granted defendant's motion, and the State has appealed.

On April 28, 1976, defendant was indicted for the murder of Tony Williams (indictment No. 76-2508). Defendant was arrested the next day, and remained in custody until May 18, 1977, when he was released on bond. During this initial period of incarceration, defendant did not seek to advance trial on the charge. Rather, he directed his efforts to suppressing evidence and to securing his release on bond. During this period the cause was continued 21 times; 16 continuances were by agreement of the parties, 1 was on defendant's motion, and 4 were by order of the court.

On November 20, 1977, defendant was arrested for the armed robbery of Michael Trice, a crime that had occurred that same day. He was charged by information with armed robbery (information No. 77-6465), and remained in custody until March 31, 1978, when he was released on bond. During this second period of incarceration, defendant's

bond on the Williams murder charge remained in effect. Between November 20 and March 31, the Williams murder case was continued nine times; five continuances were on defendant's motion, three were by agreement, and one was by order of court.

On July 1, 1978, Charles McGee was murdered. Two days later, defendant was arrested, and was subsequently charged with armed robbery, aggravated kidnapping, and murder in connection with McGee's death (information No. 78-3995). Defendant was never admitted to bail on the three McGee charges, and has been incarcerated since July 3, 1978.

Defendant's bond on the Williams murder charge was revoked on August 7, 1978. His bond on the Trice armed robbery charge was not revoked, but on August 8, 1978, defendant pleaded guilty to that armed robbery, and was sentenced to six years' imprisonment. Thereafter, the State elected to proceed to trial on the latter charges of murder, armed robbery, and aggravated kidnapping (hereinafter referred to as the McGee charges). This matter went to trial on December 11, 1978, and on December 22, 1978, defendant was found guilty of those three offenses. The State had requested a death penalty hearing on the McGee murder, and on January 29, 1979, the trial court held the Illinois death penalty statute unconstitutional. The State then proceeded in a *mandamus* action against the trial judge, and, on November 21, 1979, the Supreme Court of Illinois vacated the trial court's order and remanded the cause for a sentencing hearing. (*People ex rel. Carey v. Cousins* (1979), 77 Ill. 2d 531, 397 N.E.2d 809, *cert. denied* (1980), 445 U.S. 953, 63 L. Ed. 2d 788, 100 S. Ct. 1603.) On May 7, 1980, defendant was sentenced to concurrent terms of 80 years on the murder count, 30 years on the armed robbery count, and 15 years on the aggravated kidnapping count.

From August 7, 1978, through January 29, 1979, the Williams murder case was continued 19 times. Two continuances were on the State's motion, one was on defendant's motion, and all others were by agreement of the parties. On January 29, 1979, defendant first demanded trial on the Williams charge. On the State's motion, the court continued the cause to March 19, 1979, at which time a trial date was to be set. On March 19, defendant's attorney did not appear, and defendant was represented by an associate of defendant's trial counsel. The trial court indicated that he expected defendant's regular attorney to be present for the scheduling of the trial: "[Y]ou tell Mr. Toole [defendant's attorney] that the court expects to see him this Thursday as this court plans to set this case down for trial on that day." The associate then agreed to a "by agreement" continuance to March 22, 1979.

On March 22, the State advised the court that it was still attempting to locate a witness in the case. The State also argued that the "by agreement" continuance from March 19 to March 22 had renewed the limitations

period of the speedy trial statute (Ill. Rev. Stat. 1979, ch. 38, par. 103—5). The trial court asked when the term would expire, and the assistant State's Attorney responded, "July 19, your Honor."[1] The cause was then continued on the State's motion to July 19, 1979.

On July 19, the State argued for the first time that the statutory term was not running, owing to the fact that a disposition of the McGee charges was still pending. The State contended that section 103—5 allowed it 160 days from judgment in the pending McGee case, and that judgment had not yet occurred. The assistant State's Attorney then offered an alternative position: "[I]f judgment was entered or it was from the time of guilt, we had 160 days as the statute would indicate. It is our position that the term is 160 days from March 22, 1979, [and] would end August 27, 1979." The State renewed its request for a continuance to locate the missing eyewitness to the Williams killing. The trial court continued the cause, on the State's motion, to July 20, 1979, for a hearing on the State's efforts to locate this witness. On July 20, the court heard testimony from two investigators for the State's Attorney's office, and concluded that the State had not exercised due diligence in attempting to locate the witness. The assistant State's Attorney then spoke to the speedy trial issue:

> "Judge, I might add, for the Court's information, yesterday, certain things were said on the record regarding the time period. It is our position that the term in this case began to run the day Mr. Toole [defendant's attorney] demanded [trial] on the 1976 indictment. The hundred sixty day period. Accordingly, the term situation, it is our contention, is August 27, 1979."

On the State's motion, the court then continued the cause to August 27. On that date, the State renewed its argument that the statutory period was not running while the McGee charges still awaited final judgment. After hearing argument, the trial court dismissed the indictment.

■■■ Section 103—5 requires that an accused be brought to trial within 120 days from the date he is taken into custody, or, if the accused has been released on bail or recognizance, within 160 days of his demand for trial (Ill. Rev. Stat. 1979, ch. 38, par. 103—5(a), (b).) The murder of Tony Williams occurred prior to March 1, 1977, so the instant case is not controlled by the provisions of section 103—5(f) (stating that delays caused by defendant merely suspend the running of the statutory period). (See Ill. Rev. Stat. 1979, ch. 38, par. 103—5(f).) Instead, this case is governed by case law holding that any delay caused by defendant will start the statutory period running anew from the date to which the cause

---

[1] July 19 is 119 days from March 22. It is likely that the assistant State's Attorney had concluded that a 120-day term was appropriate, and miscalculated. As indicated below, the State later concluded that the term should be 160 days.

has been continued. (See *People v. Donalson* (1976), 64 Ill. 2d 536, 540, 356 N.E.2d 776; *People v. Boyd* (1980), 88 Ill. App. 3d 825, 838-39, 410 N.E.2d 931.) For this reason, it is necessary to determine the last delay in this case attributable to defendant, since this will provide the date of the commencement of the statutory term. The State argues that March 22, 1979, is the appropriate date to begin the term, because defendant had agreed to the continuance from March 19 to March 22. Case law on this point favors the State's position. Where a defendant requests or agrees to a continuance, the resultant delay is attributable to the defendant. (*People v. Cunningham* (1979), 77 Ill. App. 3d 949, 951, 396 N.E.2d 876.) Defendant contends that the reviewing court should look at the record and ascertain the actual reason for the delay. The record reveals that defendant's trial attorney was not present on March 19, and that the trial judge, who was pressing for a prompt disposition of the 3-year-old indictment, determined that defendant's trial attorney should be present for the setting of the trial date. The 3-day continuance, then, was caused by the absence of defendant's regular attorney, and such a delay is properly charged to defendant. See *People v. Hairston* (1970), 46 Ill. 2d 348, 354, 263 N.E.2d 840, *cert. denied* (1971), 402 U.S. 972, 29 L. Ed. 2d 136, 91 S. Ct. 1658; *People v. Cichanski* (1980), 81 Ill. App. 3d 619, 621, 401 N.E.2d 1315.

Having ascertained that the statutory term began on March 22, it remains to determine the length of the appropriate term. The State contends that defendant was simultaneously in custody on more than one charge, and that section 103—5(e) therefore applies. Section 103—5(e) provides, in part:

> "If a person is simultaneously in custody upon more than one charge pending against him in the same county, * * *, he shall be tried, * * * upon at least one such charge before expiration relative to any of such pending charges of the period prescribed * * *. Such person shall be tried upon all of the remaining charges thus pending within 160 days from the date on which judgment relative to the first charge thus prosecuted is rendered * * *; if * * * such period of 160 days expires without the commencement of trial of, * * * any of such remaining charges thus pending, such charge or charges shall be dismissed and barred for want of prosecution unless delay is occasioned by the defendant, * * * or by an interlocutory appeal." (Ill. Rev. Stat. 1979, ch. 38, par. 103—5(e).)

In August 1978, defendant was in custody on the McGee charges, having been arrested on July 3 and charged by information on July 25, 1978. On August 7, 1978, defendant's bond in the instant case (the Williams murder charge) was revoked. On August 8, defendant pleaded guilty and was

sentenced for the Trice armed robbery. If defendant was "simultaneously in custody" on all these charges, then the judgment in the Trice case gave the State 160 days from August 8 to try the remaining charges.

■■ Defendant argues that he was not "simultaneously in custody" on the Trice armed robbery charge, since his bond on that charge was not revoked prior to his guilty plea. Defendant cites *People v. Cooper* (1977), 56 Ill. App. 3d 354, 371 N.E.2d 987, for the proposition that he is not "simultaneously in custody" on two charges when he is technically out on bond on one of the charges. The holding in *Cooper* is difficult to reconcile with that in *People v. Wilson* (1974), 19 Ill. App. 3d 466, 311 N.E.2d 759. The court in *Wilson* considered the purpose of section 103—5(e), and observed that subsection (e) was intended to mitigate the State's burden of simultaneously preparing for more than one charge against an incarcerated defendant. The appellate court concluded that to remove a case from the operation of subsection (e) because an incarcerated defendant was technically on bond for one of the charges would defeat the purpose of the statute, and the court therefore held that a defendant is "simultaneously in custody upon more than one charge" when he is in custody on one charge and on bond on another. (19 Ill. App. 3d 466, 468.) We are persuaded by the reasoned analysis in *Wilson*, and, applying the *Wilson* court's construction of section 103—5(e), it is clear that defendant was in custody on three charges on August 7, and that a 160-day term commenced with the judgment of August 8. This term was then renewed by defendant's agreed continuance of March 19.

■■■ The State contends, however, that the 160-day term could not begin to run until the other "simultaneous" charge (the pending McGee case) came to final judgment. There is ample authority for the proposition that "judgment" is not rendered in a criminal case until a guilty defendant has been sentenced. (See Ill. Rev. Stat. 1979, ch. 38, par. 102—14; *People v. Allen* (1978), 71 Ill. 2d 378, 381, 375 N.E.2d 1283.) Nevertheless, the State's position is contrary to the wording of the statute. Section 103—5(e) allows the State 160 days from the first judgment (here, August 8, 1978) to try "*all* of the remaining charges thus pending*." (Emphasis added.) The timely commencement of trial of the McGee charges did not excuse the State from bringing defendant to trial on the Williams charge within the same period. The State argues that the *mandamus* proceeding in the McGee case was in the nature of an interlocutory appeal, and thus tolled the running of the statutory period under Supreme Court Rule 604(a)(4). (Ill. Rev. Stat. 1979, ch. 110A, par. 604(a)(4).) Rule 604(a) authorizes appeals by the State in certain situations. The rule provides that the time spent on an appeal by the State is not to be counted toward a defendant's right to discharge under section 103—5. (Ill. Rev. Stat. 1979, ch. 110A, par. 604(a)(4).) Section 103—5(e) states that all remaining charges must be

disposed of within 160 days of the first disposition "unless delay is occasioned by the defendant * * * or by an interlocutory appeal." We find no inconsistency between the rule and the statute. An interlocutory appeal in the Williams case would certainly have caused a delay in the trial of that charge. It is not at all clear, however, how an interlocutory appeal in a separate and unrelated pending case can "occasion a delay" as envisioned by subsection (e). The situation in the instant case does not demonstrate any linkage between the *mandamus* action in the McGee case and the delay in the Williams case. On the contrary, the State made it clear that its lack of success in contacting a witness was the sole reason for its inability to proceed to trial on the Williams murder charge. We therefore construe subsection (e) as allowing the tolling of the statutory period for an interlocutory appeal only when the appeal has been taken in the cause that is subject to dismissal under section 103—5.

Taking this view of the applicability of section 103—5, and noting the trial court's finding that the State did not exercise the "due diligence" in locating its witness that might allow a 60-day extension under the statute, we find that the applicable period expired 160 days from March 22, 1979. As noted above, the State twice assured the trial court (on July 19 and July 20) that this 160-day period would end on August 27. The trial court then set the cause for August 27, and, finding the State still not ready for trial, dismissed the indictment. In fact, August 27 was 158 days from March 22, and the period properly ended on August 29. (See *People v. Solheim* (1977), 54 Ill. App. 3d 379, 386, 369 N.E.2d 308 (in computing the term, exclude the first day and include the last day).) The trial court's order of dismissal, which would have been proper under the statute on August 29, was therefore two days premature.

■■ The issue, then, is whether the State may be precluded from challenging a premature, but otherwise proper, dismissal when the State's miscalculation was the source of the prematurity. There is no reason to suspect bad faith or subterfuge in connection with this error. The State has not contended that two additional days might have enabled it to go to trial. Such a contention would be somewhat incredible, given the State's acknowledgement on August 27 that its crucial witness was reportedly somewhere in Mississippi.

The case of *People v. Cunningham* (1979), 77 Ill. App. 3d 949, 396 N.E.2d 876, presents an analogous situation. There, the State erroneously computed the term, and the trial court, relying on the stated term date, continued the cause to a date beyond the statutory period. The appellate court, finding no fraud or subterfuge on defendant's part, observed that it is the duty of the State to bring the defendant to trial within the appropriate term, and that the defendant, under no duty to put himself on trial, should not be estopped to claim his right of dismissal. (See 77 Ill.

App. 3d 949, 952; see also *Cichanski*, at 622.) Assuming that defendant in the instant case was unaware of the State's miscalculation, he had no duty to provide the court with his own computation of the term. Furthermore, our supreme court has held that, since section 103—5 implements substantial State and Federal constitutional rights, it should be construed liberally. See *People v. Fosdick* (1967), 36 Ill. 2d 524, 528, 224 N.E.2d 242.

■■ We need not decide how egregious the State's error must be before the defendant is charged with knowledge of it. It is sufficient for the instant case to hold that, on August 29, 1979, the indictment would have been properly dismissed under section 103—5, and given the facts apparent from the record, the dismissal on August 27 was substantially authorized by statute. We note that the trial court did not base its dismissal order on statutory grounds, but instead relied on the sixth and fourteenth amendments to the United States Constitution. Since we have found that the order of dismissal was proper under section 103—5, we do not reach defendant's constitutional argument. The decision below may be affirmed on grounds other than those cited by the trial court, since it is the judgment, and not the lower court's reasoning, which is before us on review. (See *People v. Gardner* (1977), 56 Ill. App. 3d 606, 609, 371 N.E.2d 1164.) Accordingly, the dismissal of the Williams murder indictment (No. 76-2508) is affirmed.

Affirmed.

DOWNING and PERLIN, JJ., concur.