THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GERALD FREEMAN *et al.*, Defendants-Appellants.

First District (1st Division)    No. 80-800

Opinion filed November 16, 1981.

James J. Doherty, Public Defender, of Chicago (Karen A. Popek, Assistant Public Defender, of counsel), for appellants Gerald Freeman, Lamont Johnson, and Matthew Crosby.

Ralph Ruebner and Steven M. Levin, both of State Appellate Defender's Office, of Chicago, for appellant Gregory Knox.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin D. Sweeney, and Martin D. Reggi, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

In a bench trial, defendants Gerald Freeman, Lamont Johnson, Matthew Crosby and Gregory Knox were found guilty of aggravated battery and armed violence. (Ill. Rev. Stat. 1977, ch. 38, pars. 12—4, 33A—2.) In addition, Johnson, Crosby and Knox were found guilty of aggravated kidnapping. (Ill. Rev. Stat. 1977, ch. 38, par. 10—2.) The issues raised on appeal are: (1) whether Freeman was proven guilty beyond a reasonable doubt of armed violence; (2) whether the convictions of Freeman, Johnson and Crosby for armed violence should be reversed because the evidence was insufficient to establish that any defendant was armed with a gun; (3) whether the convictions of Johnson and Crosby for aggravated kidnapping should be reversed because the offense arose out of the same transaction as the armed violence; (4) whether the court was precluded from imposing an extended term in sentencing Johnson for aggravated battery because Johnson had never been convicted of a felony of the same or greater class; (5) whether the court was precluded from imposing extended terms in sentencing Freeman, Johnson and Crosby for aggravated battery because defendants did not receive notice that they could receive extended terms and because the evidence was insufficient to establish their prior felony convictions; (6) whether the testimony of the victim was sufficient to convict defendant Knox where the State failed to present the testimony of any other witnesses to the acts; (7) whether Knox was denied his right to a fair trial and whether errors at trial amounted to plain error; and (8) whether Knox did not receive effective assistance of counsel where Knox and his three codefendants were represented by a single public defender.

For the reasons set forth herein, we affirm.

Janice Freeman testified that on November 11, 1978, at 1 a.m., she was returning home from a party. As she walked up the back stairway to her apartment and entered the second floor hallway, she saw Gerald Freeman, who is her brother-in-law, Lamont Johnson, Matthew Crosby, Gregory Knox and Gregory Nugent. Freeman approached her and asked her where the "enforcer" was. She understood Freeman to mean the machine gun which Johnson had given her to keep a few days earlier. After getting her roommate's approval to keep the weapon, she placed the gun which was in a case behind a box in the closet of the apartment. When Gerald Freeman had requested the weapon, she indicated that the weapon was in her apartment. He told her that the weapon was not there.

Janice Freeman stated that the defendants had created a disturbance in the hall which resulted in a few of the people that were in her apartment to come to the apartment door to see what the commotion was about. Gerald Freeman then struck her in the face three times, causing her to fall backwards. Her hand was cut when it went through the window pane of the back door. Gerald Freeman then went into her apartment. Defendant Knox then asked her where the weapon was, and she responded that she did not know. Johnson, Crosby, Knox and Nugent forced her into an apartment which was across the hall from her apartment. Knox then struck her in the face several times. Knox then grabbed a metal lawn chair and hit her across the head and in her abdomen. She doubled over because of the blow to her abdomen and she was kicked and struck several more times. She did not know who was striking her at this time. During this time, Knox repeatedly asked Janice Freeman the location of the machine gun and she replied that she did not know where the weapon was.

She testified that she then went into the hall and was attempting to return to her apartment when Johnson stopped her and placed a gun to her head. Johnson told her that she was going with him, Crosby, Knox and Nugent. She testified that she did not know where Johnson obtained the gun on that occasion, but that she had previously seen the gun when Johnson threatened her boyfriend with it. The four men dragged her out of the hallway and down the back stairway during which time she was screaming for her brother-in-law Gerald Freeman. While she was being dragged down the stairway, Crosby kicked her hand as she was clutching the bannister and then struck her hand with a broken piece of the bannister. At the bottom of the stairs, Johnson, Crosby and Knox picked her up and placed her inside the trunk of a car which was parked nearby. She testified that while she was in the trunk with the trunk lid still open, she saw Gerald Freeman with her daughter. Freeman held the daughter around the shoulders and prevented the girl from running to her mother. Freeman then told the men to make her tell, but do not kill her. A person named Carolyn approached Janice Freeman and told her to tell the defendants where the weapon was. Janice Freeman still said she did not know where the machine gun was. The trunk lid was closed and the car was driven away. Shortly thereafter, the car was stopped and the trunk was opened. Her mouth, hands and feet were bound with rags by Johnson and Crosby while Nugent and Knox watched. The trunk lid was then closed and the car began moving again.

By the time the car had stopped, Janice Freeman had untied the rags, but she could not get out of the trunk. After the trunk was opened, Knox twice struck her in the face with his fist. She testified that she was forced to get out of the trunk and that Knox, Johnson, Crosby and Nugent

accompanied her to a basement apartment. She then was led to a bedroom where she was seated in a metal folding chair. Crosby and Johnson bound her feet to the chair with coat hangers. Knox then struck her in the face and stomach while she was tied to the chair. Knox repeatedly asked her where the machine gun was and each time she responded that she did not know. Knox then asked her where her boyfriend lived apparently because Knox thought that she may have given the gun to her boyfriend. Johnson also struck her while she was tied to the chair while Crosby and Nugent watched.

According to her testimony, Knox then gave Nugent a needle and told him to put battery acid in the needle. While Nugent was outside the bedroom, she told the others that they could do whatever they wanted to her, but that she did not take the machine gun. On direct examination, she testified that her money was missing and that she wanted the men to give the money to her daughter. On cross-examination, she denied that she had lost any money and denied that she had offered one of the defendants money to fight. She also denied on cross-examination that she had attempted to arrange a fight between Knox and Johnson. After a few minutes, Nugent returned with the needle and then Knox stuck the needle into her neck. Johnson made a remark about the police and Johnson and Knox left the apartment. Crosby and Nugent untied Janice Freeman and the needle fell from her neck. Crosby then slapped her and she fell against the wall cutting her face. Crosby left the apartment and Nugent remained with her. She then attempted to wipe the blood from her face and eyes. She testified that Officer Shaw entered the apartment with Crosby. She did not answer any questions asked by the officer concerning her injuries. Other police officers arrived and she was then taken back to her apartment building where she spoke with a girlfriend while she was still in the police car. She was then taken to the hospital where she was treated for her injuries. At trial, Janice Freeman identified photographs of her which had been taken after she had been beaten. She also identified the weapon which was held to her head by Johnson. On cross-examination, Janice Freeman testified that there were people in her apartment when she was first struck by Freeman. She stated that she had seen the gun which Johnson held to her head a few weeks earlier when Johnson had pulled the gun on her boyfriend during the course of a fight. She also denied attempting to arrange a fight between Knox and Johnson. Janice Freeman admitted that she had been convicted of possession of heroin.

Officer Shaw testified that he arrived at the basement apartment in response to a complaint. He entered the apartment with Crosby and found the victim with her face almost completely swollen with one eye closed and bleeding. The victim told the officer that the men were not responsible for her condition. Shaw found Nugent in the bedroom of the

basement apartment. Shaw then called a beat car. At 5:30 a.m. Shaw went to the apartment where the victim first had been beaten and where Johnson, Crosby, Knox, Nugent and Freeman were. The five men and seven others were arrested and taken to the police station. The officer also testified that there was assorted drug paraphernalia in the apartment.

Officer Bedren testified, without objection, about a conversation that he had with Janice Freeman while she was at the hospital. The victim told Bedren that she was approached by the five men in the hallway of her apartment building. She said the men discussed with her getting a ride and a machine gun. Bedren stated that he went to the apartment where the victim had been beaten because the victim had furnished Bedren with the names of the five men. At trial, Bedren identified Knox, Freeman, Crosby and Johnson as four of the 11 persons who were in the apartment that morning. Bedren stated that 11 persons were arrested that morning. After the arrests were made, Bedren searched the apartment and found a gun in the stove. When he showed the gun to the victim, she told him that it looked like the gun, but that she was not certain. The five photographs of the victim were admitted into evidence without objection. The defense objected to the admission of the weapon based upon relevancy. The trial court overruled defendants' objection. The State then rested its case.

Gerald Freeman testified that on the evening of the disturbance, he was attempting to restrain Janice Freeman from interfering in a fight between her boyfriend and Johnson. He stated that he struck her during his attempt to restrain her, she fell backwards and her hand went through a window. Freeman testified that he next saw Janice Freeman at the police station at about 5 a.m. He denied that he threw her down the stairs, that he helped put her in the trunk of a car and that he threatened her. Gregory Knox testified that he first had seen the victim at about 1 a.m. at a lounge, at which time her face was swollen. He stated that he went with the victim to the basement apartment where he tried on a suit. He was given money by the victim to shoot Johnson because she was angry with Johnson. Knox claimed that he did not intend to shoot Johnson, but intended to "beat her for the money." Michael Porshay, one of the individuals who was arrested in the apartment, testified that he saw the victim and Nugent walking down the stairs to the apartment building and get into his car.

The court found all four defendants guilty of armed violence in the commission of an unlawful restraint and guilty of aggravated battery. Defendants Johnson, Crosby and Knox were found guilty of aggravated kidnapping. Each of the defendants' sentences for aggravated battery were imposed under the extended term provisions of the Unified Code of Corrections. (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—2.) Defendants appeal.

## I

The first issue raised on appeal is that defendant Gerald Freeman was not proven guilty of armed violence beyond a reasonable doubt because the evidence demonstrated at most that he was guilty of only aggravated battery. Defendant Freeman claims that the testimony of Janice Freeman established that he was present in the hallway near her apartment and that he was present with Janice Freeman's daughter while she was in the trunk of the automobile. He contends that the court found that the offense of armed violence occurred when Lamont Johnson placed the gun to the head of Janice Freeman and that the testimony failed to prove that he was present. He also argues that the evidence was insufficient to prove that he shared the criminal intent or joined in a common purpose with the other defendants to accomplish the crime. He urges that, without further evidence, he cannot be convicted of the offense of armed violence because the evidence was insufficient to establish his guilt beyond a reasonable doubt. Defendant argues that in order to be convicted under the accountability provisions of section 5—2(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 5—2(c)), the State must prove beyond a reasonable doubt that: (1) defendant solicited, aided, abetted, agreed or attempted to aid another person in the planning or commission of the offense; (2) such participation must have taken place either before or during the commission of the offense; and (3) such participation must have been with the concurrent, specific intent to promote or facilitate the commission of the offense. (*People v. Ramirez* (1968), 93 Ill. App. 2d 404, 410, 236 N.E.2d 284, 288.) He argues that the State has failed to meet its burden of proof in that it failed to establish beyond a reasonable doubt that defendant shared the criminal intent of the principals or that there was "a community of unlawful purpose." (*People v. Ramirez* (1968), 93 Ill. App. 2d 404, 411, 236 N.E.2d 284, 288; see *People v. Bolden* (1978), 59 Ill. App. 3d 441, 375 N.E.2d 898.) Defendant argues that there is insufficient evidence to establish beyond a reasonable doubt that he possessed the requisite prior intent that went beyond the initial act of striking Janice Freeman. At most, defendant urges, the only common purpose defendant shared with the others was to ascertain the location of the machine gun. Defendant suggests that he was found guilty by the court based upon his mere presence at or near the vicinity of the crime and that this is not enough to make him culpable. (See *People v. Washington* (1970), 121 Ill. App. 2d 174, 257 N.E.2d 190.) He also contends that even if consent or knowledge that an offense was being committed had been established, this could not have been enough to establish that he aided or abetted the other defendants. See *People v. Tillman* (1971), 130 Ill. App. 2d 743, 265 N.E.2d 904.

The State concedes that defendant's mere presence at the scene of an offense is not sufficient to impose guilt upon an individual; however, where there is evidence of conduct or other surrounding circumstances which show design on the part of defendant to aid, abet or assist in the perpetration of an offense, he can be held legally accountable for the acts of others without a physical act or participation in the commission of the offense. (*People v. Gray* (1980), 87 Ill. App. 3d 142, 408 N.E.2d 1150.) The State contends that if the defendant was present at the scene of a crime without disapproving or opposing it, the trier of fact may consider such conduct with other facts and circumstances and conclude that the defendant assented to the commission of a crime, lent his countenance and approval and thereby aided and abetted the commission of the crime. (See *People v. Dandridge* (1979), 79 Ill. App. 3d 693, 398 N.E.2d 955.) The State urges that the facts of this case, as found by the trial court, establish beyond a reasonable doubt that defendant Freeman was guilty of armed violence under an accountability theory. The State contends that Freeman struck defendant in the hall and forced her to go into the apartment situated across the hall where she was beaten by the other defendants. During the course of the beating, defendant Johnson told Janice Freeman that they were going to kill her. The State argues that when all the events are viewed together, defendant Freeman shares the guilt for the totality of the event based upon his initial participation as well as continued participation in the process of the defendants placing Janice Freeman in the trunk of the car.

■■ Although the court found that defendant Freeman was not present when the crime of armed violence was committed, it did find that Freeman aided and abetted the commission of that offense. Where an individual attaches himself to a group bent on illegal acts which are of a dangerous nature, or which will probably or necessarily require the use of force and violence, he becomes criminally liable for any of the wrong-doings committed by other members of the group in furtherance of the common purpose, or as a natural or probable consequence thereof, even though he did not participate in the overt act itself. (See *People v. Tate* (1976), 63 Ill. 2d 105, 345 N.E.2d 480; *People v. Fields* (1978), 65 Ill. App. 3d 278, 382 N.E.2d 337.) In its findings, the trial court stated that it believed the version of events as stated by Janice Freeman. From her testimony, it appeared that Gerald Freeman was the motivating force behind the events which resulted in her beating. Freeman was the first person to strike her, he was one of the individuals who forced her to go into the apartment across the hall and he was present when she was placed in the trunk of the car. Considering that Freeman was the initial perpetrator of the violence directed toward Janice Freeman and the fact

that he acquiesced and assisted in her being taken into the apartment where she was beaten, we believe that the trial court's finding that defendant Freeman was guilty of the crime of armed violence under an accountability theory was based upon sufficient evidence. The acts in which Freeman and the others were involved were designed to elicit the whereabouts of the machine gun. The threatening of Janice Freeman with the gun by Johnson could be viewed as an act in continuation of the common purpose of ascertaining the location of the weapon. See *People v. Dandridge* (1979), 79 Ill. App. 3d 693, 398 N.E.2d 955; *People v. Fields*.

## II

Defendants Freeman, Johnson and Crosby argue that their conviction for armed violence should be reversed because the evidence was insufficient to establish that any defendant was armed with a gun at the time of the unlawful restraint of Janice Freeman. The defendants contend that the trial court found that when Janice Freeman was taken into the apartment from the hallway where she was beaten, the crime of unlawful restraint had occurred and one of the defendants was armed with a gun. Defendants argue that when she was detained or taken into the apartment, the evidence does not establish, nor did the court find, that any of the defendants was armed with a gun. Defendants also claim that the evidence failed to establish where Lamont Johnson obtained the weapon since Janice Freeman did not see where Johnson had obtained the weapon before he placed it to her head.

The State contends that defendants fail to consider that the actions which comprise the crime of armed violence were not a series of events isolated in time, but rather a succession of events which were continuous and closely related in both time and place. The State argues that defendants' unlawful restraint of Janice Freeman was a long continuous series of acts and a series of attacks over the course of time. The State argues that the defendants were convicted for what they did and not where they did it and that to permit the defendants to misconstrue the finding of the trial court would work an injustice to the victim.

■■ We believe that the trial court was correct in its finding that defendants were guilty of armed violence. The defendants urge this court to read narrowly the ruling of the trial court which we will not do under the facts of this case. Since the trial court had the opportunity to hear the testimony and to assess the weight of the evidence and the credibility of witnesses, we will not disturb its findings unless the evidence is so improbable as to raise a reasonable doubt. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) The evidence in this case is not so improbable as to create a reasonable doubt that one of the defendants was armed with a

weapon at the time Janice Freeman was unlawfully restrained. Defendants' contention that the evidence was insufficient to establish their guilt of armed violence is not well founded.

## III

Defendants Johnson and Crosby argue that their convictions for aggravated kidnapping should be vacated because the act of aggravated kidnapping arose from the same transaction as the act of armed violence. Defendant relies upon *People v. Stewart* (1970), 45 Ill. 2d 310, 259 N.E.2d 24, for the proposition that the conviction must be vacated where the acts constituting one offense are not separable from the conduct which constituted the second offense. Defendants argue that the acts of armed violence were directed toward the same objective as the act of kidnapping and that the armed violence was the initial step of the offense of aggravated kidnapping. (See *People v. Anthony* (1976), 38 Ill. App. 3d 190, 347 N.E.2d 179.) The State contends that the record indicates that the offenses of armed violence and aggravated kidnapping were independently motivated and separable from one another. The State argues that each offense was based upon different physical acts and that it was proper for the court to find defendants guilty of both offenses. See *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.

■■ Although the offenses were committed in order to learn the whereabouts of the machine gun, we believe that the acts involved in each of the offenses were separate. According to the court's findings, the offense of armed violence was complete at the time the victim was taken to the apartment by the defendants, whereas the aggravated kidnapping occurred when the victim was transported from her apartment building in the trunk of the automobile. The fact that these two offenses were committed in a series of closely related transactions and that they were motivated by the same objective does not mean that a defendant can be convicted of only a single offense. Each of the two offenses requires proof of different elements and the acts constituting each offense differed in both time and place. See *People v. King*.

## IV

Defendant Johnson contends that the court was precluded from imposing an extended term in sentencing him for aggravated battery because he had never been convicted previously of a felony of the same or greater class. The basis of defendant's contention is that the court misread his "rap sheet" and that defendant was not convicted of a felony of equal or greater class within the ten years preceding this conviction. Defendant argues that, therefore, his extended-term sentence was improper under the

statute (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—2), and that the sentence must be vacated and remanded for resentencing. The State argues that defendant's argument is speculative since the court did not indicate whether it was sentencing defendant to an extended term based on factors considered in aggravation or whether it was sentencing defendant to an extended term because of a prior conviction. The State urges this court to affirm the sentence on either of two grounds. First, the extended sentence was proper because defendant was convicted of a felony of equal or greater class within 10 years of the conviction of this offense, or, second, the sentence was proper because the offense was accompanied by "exceptionally brutal or heinous behavior indicative of wanton cruelty." (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—3.2(b)(2).) The State argues that it is proper for this court to affirm the decision of the trial court so long as the ruling was correct since it is the judgment of the court which is being reviewed, not its rationale for the judgment. *People v. Brown* (1981), 94 Ill. App. 3d 609, 418 N.E.2d 1093; *People v. Gardner* (1977), 56 Ill. App. 3d 606, 371 N.E.2d 1164.

■■ Our review of the arguments of both parties leads us to conclude that defendant's contention is not well founded, especially in light of the statements made by the court in imposing the sentence. The court stated that it would "be remiss if [it] failed to note that the beating and treatment of this woman was savage, almost beyond our comprehension." The judge further stated that beating the victim and throwing her in a car trunk and then taking her to another place where she was beaten again "is something that is so repulsive to this court that I must recognize a duty to society to punish when it occurs." The court also noted that there was no basis to treat the victim in such a "brutal manner." On the basis of *People v. Brown* and *People v. Gardner* that the extended sentence was imposed solely because of a prior felony conviction, we need not address ourselves to defendant's contention since we hold that the trial judge could properly sentence defendant to an extended term because of the "exceptionally brutal and heinous behavior indicative of wanton cruelty" which was involved in this crime. Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—3.2(b)(2).

## V

Defendants Freeman, Johnson and Crosby argue that the court was precluded from imposing extended terms in sentencing for aggravated battery because they were never given notice that they could receive extended terms and because the evidence was insufficient to prove their prior felony convictions. Defendants argue that fundamental fairness pursuant to the due process clauses of the Federal and State constitutions requires that defendants be given notice prior to trial, or at least prior to sentencing, that their earlier convictions could result in the imposition of

extended terms. (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2.) The defendants also contend that the court's reliance upon "rap sheets" alone was insufficient to prove beyond a reasonable doubt that they had prior felony convictions.

The State argues that Illinois law is clear that the extended sentencing provisions become operative at the sentencing level and not at the indictment level as urged by defendants. (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—2; *People v. Butler* (1979), 78 Ill. App. 3d 809, 396 N.E.2d 1374.) The State also contends that the court could have imposed an extended sentence based on the brutality involved in the crime, rather than on the defendants' prior convictions, and that the defendants' sentence should not be disturbed because the court did have a basis for imposing the extended sentences. See *People v. Brown; People v. Gardner.*

Defendants' argument that they were sentenced to extended terms solely because of their prior felony convictions is without merit. We elect to affirm the sentences of defendants because of the brutality involved in the crimes. (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—3.2(b)(2).) As previously indicated the trial judge commented upon the brutal and savage treatment of the victim at the time he imposed the sentences. We believe that this is sufficient justification for the imposition of extended terms. Therefore, it is not necessary for us to consider whether defendants should have received notice that their earlier convictions could result in extended terms or whether the court's alleged reliance upon the "rap sheets" was improper. *People v. Brown; People v. Gardner.*

## VI

In a separate brief, defendant Knox contends that the uncorroborated, incomplete and contradictory testimony of an admitted narcotics addict (Janice Freeman) was insufficient to convict him, especially where the prosecution failed to present the testimony of other witnesses to an incident that was observed by numerous individuals. Defendant argues that whether a witness is a narcotics addict is an important factor to consider when assessing the witness' credibility because " 'the testimony of a narcotics addict is subject to suspicion due to the fact that habitual users of narcotics become notorious liars.' " (*People v. Strother* (1972), 53 Ill. 2d 95, 99, 290 N.E.2d 201, 204.) Defendant further contends that since the victim had been convicted of possession of heroin and had needle marks on her arm from heroin use, her testimony was highly suspicious and worthy of little credence. He claims that absent the testimony of Janice Freeman, the evidence was insufficient to find him guilty of the offenses. Defendant contends that the testimony of the victim was inherently improbable. He argues that when the victim was accosted in

the hall, she was returning home from a party which her boyfriend attended and that it is unlikely that her boyfriend would not accompany her home. Defendant argues that the State's failure to call other witnesses warrants the trial court in finding that the witnesses would testify adversely to the prosecution. (See *People v. Smith* (1971), 3 Ill. App. 3d 64, 278 N.E.2d 551.) Defendant contends that the State failed to produce the bannister rail with which the victim was struck, the needle which Nugent stuck in her neck, the metal chair with which she was beaten, the machine gun and the rags with which she was bound. Defendant claims that this evidence was necessary to corroborate the testimony of the victim and that absent this evidence the victim's testimony is suspect. Defendant also claims that the hospital care which she received casts doubt upon her story because she did not receive the extensive treatment which would be expected where an individual was seriously injured. He contends that the evidence presented by the State was not impeached by the prosecution and that the evidence failed to rebut the defense.

The State argues that the issue of the credibility of witnesses is within the province of the trial judge who is in the position to assess the testimony, demeanor, mannerisms and expressions of witnesses. (*People v. Ashford* (1974), 17 Ill. App. 3d 592, 308 N.E.2d 271.) The State contends that the testimony of a single witness, if positive and credible, is sufficient to sustain a conviction even though the testimony is contradicted by the accused. (See *People v. Carr* (1973), 16 Ill. App. 3d 76, 305 N.E.2d 554.) The State further urges that a court of review should not substitute its judgment for that of the trier of fact on a question involving the credibility of a witness and should not reverse a conviction unless the evidence is so improbable as to raise a reasonable doubt. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) The State refers us to the testimony of the police officers and argues that their testimony corroborates that of the victim. The State also contends that it introduced photographic evidence to substantiate the injuries sustained by Janice Freeman.

■■ The issue raised by defendant is one of the credibility of Janice Freeman. Based upon *People v. Strother*, defendant urges us to adopt a *per se* rule that the testimony of a narcotics addict is not to be believed unless corroborated by other credible evidence. The trial judge as the trier of fact is uniquely suited to assessing the credibility of a witness and his evaluation of the testimony of a narcotics addict is based on many factors, including the witness' addiction. (See *People v. Ashford.*) The trial court stated that it believed the version of the events as related by the victim and this is sufficient to support the court's finding defendant guilty even though the State did not offer the items of physical evidence which defendant urges are necessary to corroborate the victim's testimony. (See

*People v. Carr.*) We do not believe that the evidence introduced at trial was so improbable as to raise a reasonable doubt as to defendant's guilt. See *People v. Manion.*

## VII

Defendant Knox next contends that a combination of objected-to and unobjected-to errors at trial resulted in plain error and a denial of his right to a fair trial. In support of his contention, defendant argues that the State was permitted to introduce hearsay testimony to bolster the testimony of the victim; that the State was allowed to question defendant about a prior inconsistent statement and failed to introduce into evidence the alleged prior inconsistent statement; and that the defense was precluded from questioning the victim about her narcotics addiction.

The State contends that defendant has waived any error which resulted from the admission of unobjected to testimony because of defendant's failure to make a timely objection and to indicate the specific basis of the objection. (See *People v. Haywood* (1978), 60 Ill. App. 3d 236, 376 N.E.2d 328, *cert. denied* (1979), 440 U.S. 948, 59 L. Ed. 2d 637, 99 S. Ct. 1427.) The State also notes that the court sustained any objections made by the defendant to hearsay evidence. Concerning defendant's contention that the State improperly was permitted to question defendant about a prior inconsistent statement without introducing evidence to establish the prior inconsistent statement, the State argues that the admission of the testimony did not contribute to the finding of guilt since other relevant, competent and properly admitted evidence was of a substantial nature to warrant finding defendant guilty. (*People v. Landgham* (1970), 122 Ill. App. 2d 9, 257 N.E.2d 484, *cert. denied* (1971), 402 U.S. 911, 28 L. Ed. 2d 652, 91 S. Ct. 1389.) The State also contends that the refusal of the trial court to permit the defendant to question the victim about her narcotics addiction was proper. The State argues that if any error did exist, it was harmless and does not require the reversal of defendant's conviction.

■■ Our review of the arguments made by the parties concerning the objected-to and unobjected-to errors at trial, the use of hearsay to bolster the testimony of the victim and the interrogation of defendant Knox concerning an alleged prior inconsistent statement leads us to conclude that if any error existed, it was harmless considering the other competent evidence concerning defendant's guilt which was introduced at trial. (See *People v. Laurry* (1972), 5 Ill. App. 3d 713, 283 N.E.2d 895.) With respect to defendant's contention that he was not permitted to question the victim about her heroin addiction and this prevented defendant from impeaching the victim, we believe the trial court acted properly. Although we note that the trial court should be concerned with credibility of the testimony

of a narcotics addict, it is within the court's discretion to either permit or deny broad cross-examination of the witness based upon the nature of the case before the court. (See *People v. Galloway* (1974), 59 Ill. 2d 158, 319 N.E.2d 498.) In instances where a narcotics addict's testimony is essential to the prosecution for a violation of a drug law, defendant should be permitted to cross-examine the witness in detail concerning his past or present use of narcotics. See (*People v. Strother* (1972), 53 Ill. 2d 95, 290 N.E.2d 201; *People v. Boyd* (1959), 17 Ill. 2d 321, 161 N.E.2d 311.) In the instant case, the prosecution of defendant did not involve the violation of any drug law, rather it involved crimes of violence. We do not believe that the trial court erred in prohibiting the defense from extensive cross-examination of the victim concerning her narcotics habit where the subject matter of the prosecution had no relationship to violation of the narcotics laws.

## VIII

Finally, defendant Knox argues that representation of him and his three co-defendants by a single public defender deprived him of effective assistance of counsel. Defendant argues that joint representation prevented counsel from inquiring in detail into the relationship of Gerald Freeman, the victim and others. Defendant implies that he had competing interests with the other defendants and that he was prejudiced by joint representation by counsel. (See *People v. Ware* (1968), 39 Ill. 2d 66, 233 N.E.2d 421.) Defendant also relies upon *Holloway v. Arkansas* (1978), 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173, to support his contention that he was denied effective assistance of counsel by the trial court's failure to appoint separate counsel or determine whether the risk of conflict was too remote to require the appointment of separate counsel for defendant.

The State argues that defendant's reliance on *Holloway* is misplaced since *Holloway* involved defense counsel's motion for the appointment of separate counsel where counsel had received certain confidential information from co-defendants and he risked certain conflicts of interests through joint representation. The State argues that *Holloway* requires the trial judge to investigate timely objections made by counsel where counsel represents several defendants and the attorney believes that there may be conflicts of interest in joint representation. The State argues that absent special circumstances, the trial court may assume that joint representation involves either no conflict or that the clients knowingly accept such risks which may be involved in joint representation. (*Cuyler v. Sullivan* (1980), 446 U.S. 335, 64 L. Ed. 2d 333, 100 S. Ct. 1708.) The State argues that the burden to determine whether a conflict of interest exists or may exist falls upon defendant's counsel, who is in the best position to ascertain and evaluate the conflict. (*Holloway v. Arkansas*.) Under

*Cuyler*, the State argues that an actual conflict must be shown where no objection to multiple representation was raised at trial.

■■ Defendant does not indicate where the actual conflict of interest in joint representation lies, rather, defendant urges this court to hold that he received ineffective assistance of counsel because of a hypothetical conflict of interest. Absent an actual conflict of interest, the judgment of the trial court will not be reversed based upon defendant's unsupported allegations. (See *People v. Berland* (1978), 74 Ill. 2d 286, 385 N.E.2d 649, *cert. denied* (1979), 444 U.S. 833, 62 L. Ed. 2d 42, 100 S. Ct. 64.) We do not believe that the cases cited by defendant are on point since both *Ware* and *Holloway* involved motions by counsel for co-defendants requesting appointment of separate counsel. Defendant has not established that an actual conflict of interest adversely affected his counsel's performance, and the mere possibility of conflict is not sufficient to warrant reversal of his conviction. See *Cuyler v. Sullivan*.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

GOLDBERG and O'CONNOR, JJ., concur.