(No. 42271.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
ROBERT STEVEN MARIN *et al.*, Appellants.

*Opinion filed January 25, 1971.—Rehearing denied March 31, 1971.*

MICHAEL J. SCHWARZBACH and RALPH C. HART-
SOUGH, both of Chicago, (JOSEPH N. LASCARO, of counsel,)
for appellants.

WILLIAM J. SCOTT, Attorney General, of Springfield,
and WILLIAM V. HOPF, State's Attorney, of Wheaton,
(JAMES B. ZAGEL, Assistant Attorney General, and A. E.
BOTTI, JAMES W. JERZ and EDWARD W. KOWAL, Assistant
State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the
court:

On September 26, 1968, the Du Page County grand

jury indicted Daniel Clinton Pieler, and the present defendants, Robert Steven Marin and Ethel Marie Marin, his wife, upon charges of aggravated kidnapping. On the defendants' motion, their cases were severed from that of Pieler. A jury found them guilty in February of 1969, and each was sentenced to imprisonment for not less than 15 nor more than 30 years. On this direct appeal they assert that their constitutional rights were violated in several respects.

On September 18, 1968, Hillard Willis Marks, then seven years of age, was on his way home from school when he was told by the driver of a car that his mother was in the hospital. At the driver's request he got into the car, which contained two people. The driver was Daniel Pieler, and the other person was the defendant Ethel Marie Marin. After the boy entered the car, he was driven to the home of the defendants in Riverdale, Illinois. When they arrived there, Pieler told him to get into a laundry bag which was on the floor of the back seat. He did so and was taken in the laundry bag from the automobile into the defendants' home. He was kept there until September 20, 1968, when the defendants were arrested. He was not physically harmed.

At their trial, the defendants contended that the boy was taken with the consent of his father, William Marks, pursuant to an agreement entered into between William Marks and Pieler, designed to extort money from the boy's wealthy grandfather. Evidence was offered from which the defendants sought to have the jury draw that inference. Pieler was not called as a witness.

On this appeal, the defendants advance four grounds for reversal of their convictions. They argue that the prosecutor failed to disclose evidence favorable to them, that statements made by them while in custody were received in evidence in violation of their fifth amendment privilege against self-incrimination and their sixth amendment right to counsel, that the jury was improperly instructed on the

definition of the crime of aggravated kidnapping, and that the jury was improperly permitted to dine at a public restaurant during its deliberation on the verdict.

The defendants' contention that the prosecutor failed to disclose evidence favorable to them is based largely upon the circumstance that Pieler was subsequently tried separately, and, as the defendants put it, "admitted the complicity of William Marks and was acquitted of the crime charged". Because we have concluded that the jury was erroneously instructed, it is unnecessary to discuss either that contention or the further contention that prejudicial error was committed when the jury was allowed to eat at a public restaurant during its deliberations.

Each of the four counts of the indictment charged Pieler and the present defendants with aggravated kidnapping. Each count alleged that the victim, Hillard Willis Marks, was a child under the age of 13 years, and that he was taken without the consent of his parents. The primary defense advanced upon the trial of this case was that the father of the victim, William Marks, consented to the kidnapping of his child in order to induce his father, the child's grandfather, to pay a ransom for the return of the child. The defendants' contention is that the judgment must be reversed because the instruction that told the jury what the prosecution must prove in order to establish the defendants' guilt omitted all reference to the effect of consent by the parent or legal guardian when the victim was a child under 13.

The following given instructions bear upon this issue:

"A person commits the crime of kidnapping who knowingly and secretly confines another person against his will; or by deceit or enticement induces another person to go from one place to another place with intent secretly to confine that person against his will." (State 13.)

"Confinement of a child under the age of 13 years is

deemed to be against his will if his parent or legal guardian has not consented to the confinement." (State 14.)

"A person who kidnaps another commits the crime of aggravated kidnapping when: the victim is a child under the age of 13 years and the said child's parent or legal guardian has not consented to the confinement." (Def. 24.)

"A person who kidnaps another commits the crime of aggravated kidnapping when: he kidnaps for the purpose of obtaining ransom, money, benefit, or other valuable thing or concession from the victim or from any other person; or the victim is a child under the age of 13 years." (State 15.)

"To sustain the charge of aggravated kidnapping, the State must prove the following propositions: First: That the defendants acted knowingly; and Second: That the defendants secretly confined Hillard Willis Marks against his will; or that the defendants by deceit or enticement induced Hillard Willis Marks to go from one place to another place and that when the defendants did so, the defendants intended secretly to confine Hillard Willis Marks against his will; and Third: That the defendants acted for the purpose of obtaining ransom, money, benefit, or another valuable thing or concession from William Marks; or that Hillard Willis Marks was a child under the age of 13 years.

"If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendants guilty.

"If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendants not guilty." (State 16.)

The question presented is whether the absence of parental consent is an essential element of the crime of ag-

gravated kidnapping when a child under the age of 13 is secretly confined for ransom. It was the position of the prosecution and of the trial judge that the allegation of lack of parental consent was surplusage in those counts of the indictment which charged kidnapping for ransom. In other words, it was their position that the fact that one of the parents had consented to the taking and confinement of the child was of no consequence if the defendants had acted "for the purpose of obtaining ransom, money, benefit, or other valuable thing or concession." That position was expressed in the instructions that were given to the jury.

We do not agree with that position. Under the Criminal Code there can be no kidnapping unless it occurs against the will of the victim and the statutory definition of the offense of kidnapping says that the "Confinement of a child under the age of 13 years is against his will within the meaning of this Section if such confinement is without the consent of his parent or legal guardian." (Ill. Rev. Stat. 1967, ch. 38, par. 10—1.) Thus there can be no kidnapping of a child under the age of 13 if the confinement occurs with the consent of his parent. And there can be no aggravated kidnapping unless there is a kidnapping.

Absence of consent has always been an element in the offense of kidnapping. Prior to the effective date of the Criminal Code of 1961, there were three statutory provisions governing the offense of kidnapping; One section prohibited what may be called "simple" kidnapping, which was punishable by imprisonment for not less than one nor more than five years or by a fine of not more than $1000, or both. The same section provided that one who committed the offense while hooded, robed or masked so as to conceal his identity should be fined not less than $500 nor more than $2000 or imprisoned for not less than five years nor more than 14 years, or both. And that section contained the following provision: "This section shall not extend to a parent taking his or her minor child, unless such

parent is deprived of the right to have the custody of such child by the order of a court of competent jurisdiction." (Ill. Rev. Stat. 1961, ch. 38, par. 384.) Another section prohibited the kidnapping of an infant under the age of 12 years without the consent of the parent, guardian or lawful custodian of the child. This offense was punishable by imprisonment for life or for any number of years not less than one year. (Ill. Rev. Stat. 1961, ch. 38, par. 385.) The third provision, a separate statute enacted in 1901, provided that one who took any person "against his will or against the will of the parent, guardian or legal custodian of such person, for the purpose of extorting ransom or money or other valuable thing or concession * * * shall, upon conviction, suffer death, or be punished by imprisonment in the penitentiary for life or any term not less than five (5) years." (Ill. Rev. Stat. 1961, ch. 38, par. 386, Laws of 1901, p. 145.) Each of these offenses, including the offense of kidnapping for ransom, required that the offense be against the will of the victim or against the will of the victim's parent, guardian or legal custodian. Nothing in the Criminal Code of 1961 indicates an intention to eliminate the element of absence of parental consent from the crime of kidnapping for ransom.

As this case was submitted to the jury, the defendants could have been found guilty if the jury believed that the child had been taken for ransom, even though the jury also believed that the child's father had consented to his taking and being held for ransom. This is not the offense of aggravated kidnapping which the legislature has prohibited, and the cause must be remanded for a new trial at which the jury is properly instructed.

The defendants have also contended that certain statements made by them were improperly received in evidence because they were obtained in violation of the fifth amendment privilege against self-incrimination as enunciated in *Miranda* v. *Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d

694, 86 S. Ct. 1602, and the sixth amendment right to counsel as set forth in *Escobedo* v. *Illinois* (1964), 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758. The question of the admissibility of these statements will arise upon a new trial and we therefore pass upon the issue at this time.

Each defendant made two statements: The first on September 20, 1968, the day they were arrested, and the second on September 23, 1968, while they were confined in the Cook County jail.

On September 20, 1968, between 4:00 and 4:20 A.M., approximately ten FBI agents gained entrance into the defendants' home and placed them under arrest. The defendants were then interrogated. Ethel Marin denied that she had kidnapped Hillard Marks, and stated that she was only baby-sitting. Robert Marin also claimed initially that he was merely baby-sitting, but then admitted that he knew the boy had been kidnapped.

The agent who interrogated Robert Marin testified that he advised him he was under arrest and gave the required *Miranda* warnings. There were no threats of force or coercion, and no promises were made. The agent testified further that Robert Marin indicated that he understood his rights, but nonetheless made an incriminating statement about 15 minutes after his questioning began. The testimony of this agent was supported by another agent who was present at the time.

The agent who interrogated Ethel Marin testified that he gave her the required *Miranda* warnings and that no threats of force or promises were made to her. The agent testified further that Ethel Marin said she understood her rights, and signed a written waiver of them at approximately 4:33 in the morning, some 15 minutes after being placed under arrest. The testimony of this agent was corroborated by two other agents who were present at the time.

The defendants argue that "The trial court erred in failing to suppress the oral statements made by the defend-

ants, *before they had been advised by an attorney.*" There is no rule that an accused must be advised by an attorney before his waiver can be truly voluntary and knowing. The question of waiver is one to be determined on the basis of all the facts presented in the case. (See, *People v. Hill* (1968), 39 Ill.2d 125; *People v. Bey* (1970), 45 Ill.2d 535; Note, Waiver of Rights in Police Interrogations: *Miranda* in the Lower Courts (1969), 36 U. Chi. L. Rev. 413.) Our own review of the record in this case satisfies us that there was no violation of the defendants' rights in the taking of the first statement.

The second statements were given on Monday, September 23, 1968, while the defendants were confined in the Cook County jail. The defendants were taken to FBI headquarters in Chicago approximately one hour after the agents first entered their home. They were kept there two hours, and then transferred to the Chicago Police Department at Eleventh and State streets and to the Cook County jail early in the afternoon on the same day.

While confined at FBI headquarters, Robert Marin asked to use the telephone, purportedly to call his grandmother for purposes of obtaining a lawyer. He was given a telephone book at 6:00 A.M. and told to choose a lawyer but that none could be recommended to him.

Dolores Schaade, Ethel Marin's mother, testified that she was permitted to see her daughter for a few minutes at the Cook County jail on Friday, September 20, 1968. She also stated that at that time her daughter requested her to obtain a lawyer. Pursuant to her daughter's request, Dolores Schaade telephoned Sydney Goldstein and asked him to represent the defendants. Goldstein testified that he called the Cook County jail the next day, Saturday, September 21, 1968, at approximately 2:30 P.M., and was told he could not see the defendants because visiting hours terminated at 3:00 P.M. He testified further that he was told, and it is undisputed, that no one, not even a lawyer,

is allowed to visit a prisoner on Sunday. Goldstein did not attempt to see the defendants the following day, Monday, September 23, because it was a Jewish holy day.

The defendants argue on the basis of these facts that the statements subsequently given on September 23, 1968, were inadmissible because taken in violation of their sixth amendment right to counsel as enunciated in *Escobedo* v. *Illinois* (1964), 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758. The State argues that this case is distinguishable from *Escobedo* because it is undisputed that the defendants were given the required *Miranda* warnings before they were questioned, and never requested to consult with an attorney.

It seems clear to us that at the time the statements were given on September 23, the police investigation was "no longer a general inquiry into an unsolved crime", but in our opinion that fact does not render the statements inadmissible. (See, *People* v. *Weinstein* (1970), 46 Ill.2d 222, 226-7; *People* v. *P.* (*Anonymous*) (1967), 21 N.Y.2d 1, 233 N.E.2d 255, 286 N.Y.S.2d 225; *State* v. *Taylor* (1968), 249 Ore. 268, 437 P.2d 853; see also, *Hoffa* v. *United States* (1966), 385 U.S. 293, 310, 17 L. Ed. 2d 374, 386, 87 S. Ct. 408.) Rather, the crucial issue is whether, under all of the circumstances, the State has shown that the statements given by the defendants were made after a truly voluntary and knowing waiver of their rights.

The evidence on that point establishes that the defendants were questioned on two different occasions during their confinement at the county jail, once on September 22 and again on September 23. Prior to any questioning on September 23, the day the incriminating statements were given, the defendants executed written waivers, and their statements were handwritten. The most disturbing evidence suggesting that Ethel Marin's waiver was not voluntary involves her concern for her two children. Ethel Marin told Georgianna Walthers, a policewoman from the Oakbrook Police Department who was present at the Sunday, Septem-

ber 22, questioning of the defendants, of her concern. Georgianna Walthers testified that she then told Ethel Marin that the latter could not see her children as long as she was confined in the county jail. (*Cf. Lynumn* v. *Illinois* (1963), 372 U.S. 528, 9 L. Ed. 2d 922, 83 S. Ct. 917.) However, we think that on the basis of all the evidence, the decision of the trial court finding a voluntary and knowing waiver should not be disturbed.

The judgment of the circuit court of Du Page County is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*