THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
OTIS THOMAS, Defendant-Appellant.

First District (3rd Division)   No. 86—965

Opinion filed November 25, 1987.

Paul P. Biebel, Public Defender, and Frederick F. Cohn, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., John A. Gasiorowski, and James Casey, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Defendant Otis Thomas was convicted of armed robbery, armed violence, aggravated kidnapping and theft following a bench trial. The trial court sentenced defendant to 30 years for armed robbery, 30 years for armed violence, 15 years for aggravated kidnapping, and five years for theft, the sentences to be served concurrently. Defendant appeals, contending that there was insufficient evidence of "secretive confinement" to find defendant guilty beyond a reasonable doubt of aggravated kidnapping; that the evidence failed to establish the presence of a weapon; that he was not proved guilty beyond a reasonable doubt under an accountability theory; that there was insufficient evidence of armed robbery since nothing was stolen in the presence of the victim; that the theft conviction was invalid because it arose from the same act supporting the armed robbery charge; and that the trial court abused its discretion in sentencing defendant.

Linda Moulton, the victim, testified that on June 10, 1985, she worked for Illinois Bell Telephone Company collecting money from pay telephones. At 3:30 p.m. on that day, Moulton drove the Illinois Bell van to a credit union on Kedzie Avenue in Chicago. She parked in the credit union lot, locked the van, and activated the van's alarm system.

After 10 minutes in the credit union building, Moulton walked back towards the van. Charles Hatch and Ronald Roberts, two codefendants, walked up behind Moulton and told her to keep walking so

as not to be killed. Moulton saw that Roberts "had his coat pulled and he had his hand inside the jacket."

Moulton walked to the driver's side, and Roberts stayed with her while Hatch went over to the passenger's side. Moulton deactivated the alarm. As Moulton was placed in the van, Roberts told her to slide over and get in the back. Roberts got in the driver's seat, flipped the lock up for Hatch to get in the passenger's side, and then told Moulton to lie down in the back.

Roberts then "laid the gun down on the floor." Moulton repeated that she then first saw the gun. Roberts put the gun on the area between the two seats in the front of the van. Moulton only saw one gun. On cross-examination Moulton was asked, "When you saw that gun, where was it located when you first saw it?" Moulton replied, "It was on the floor." She did not see the gun when they were outside the van. The police never showed her a gun for identification purposes. Moulton was not familiar with handguns. She described the gun as "big and long" and black. She indicated with her hands how long she thought it was, and the court stated for the record that she was indicating approximately 10 inches.

After Moulton showed Roberts how to start the truck, she was told again to lie down. Moulton hesitated, and Roberts said, "Lie down, bitch, don't let me have to shoot you." Moulton sat down. Roberts told Hatch to sit on Moulton, but Hatch remained in his seat.

Roberts began backing up the van, then he drove southbound on Kedzie. After about half a block, Moulton jumped out of the back passenger panel door, which automatically activated an alarm on the van. Moulton landed on the curb and remained there for about 30 seconds. The van turned right on 92nd and Kedzie. Moulton ran back to the credit union for help.

Jenny Murphy, an eyewitness, testified for the State that on June 10, 1985, she was watering flowers outside of her house on the corner of 92nd and Kedzie when she saw defendant standing across the street near a bus stop. When the bus arrived, defendant "backed up. When it pulled away, he moved back towards the bus stop." He remained there for several minutes.

Murphy also noticed two men in front of the credit union who followed Moulton to the van. Murphy then heard an alarm coming from the van. She saw the van backing up out of the parking lot. Defendant immediately moved over to a burnt orange car parked on the corner and stood next to the car. Murphy saw Moulton jump out of the van and run. The van continued down Kedzie and turned right on 92nd Street.

As the van came further down the street, defendant entered the orange car and started driving in reverse, following the van around the corner. Murphy went into the house, and returned within 30 second with a piece of paper and a pen. Within a minute, she saw the burnt orange car come back to 92nd and Kedzie and turn right. The street is a dead-end street about two blocks from Kedzie. Defendant was still driving, and two men were now in the car with him. Murphy wrote down the license plate number and telephoned the police. Later that day, Murphy identified defendant in a lineup.

Alan Pekarski, an eyewitness and a former Illinois State police officer, testified for the State that on June 10, 1985, he lived in an apartment on the corner of Spaulding and 92nd Street, two blocks from Kedzie. Pekarski heard an alarm sound outside. He looked out the window onto Spaulding, and saw an Illinois Bell van 50 feet away, parked directly beneath his window. The van's alarm continued as the man on the passenger side exited the van. Pekarski originally identified that man as defendant, but corrected his statement, testifying that it was Hatch. Pekarski saw Hatch talk to the driver inside the van and then turn. Pekarski could then see a handgun in the waistband of Hatch's pants. It appeared to be a semiautomatic handgun, possibly nine millimeter. At this point, Pekarski telephoned the police.

Pekarski testified further that when the two men exited the van, they quickly went to a waiting car, which had arrived going backwards. Later that day, Pekarski went to the police station and identified in a lineup the two men he had seen in the Illinois Bell van. In court, Pekarski identified what appeared to him to be the gun which Hatch had carried.

Officer Dennis O'Dowd testified that on June 10, 1985, he was at the police station at 9420 Kedzie Avenue when a call was received of an armed robbery near the credit union on the 9100 block of Kedzie. As he ran to his squad car, O'Dowd saw the described vehicle and passengers passing the police station. He and several other officers immediately began pursuit. Within a minute or two, the officers surrounded the gold car when it was forced to stop in traffic for a red light. Defendant was the driver of the car, and Hatch was one of the two passengers. O'Dowd recovered a loaded nine millimeter automatic handgun, which was a dark color and was about five or six inches long.

Officer Michael Saunders testified for the State that on June 10, 1985, Jenny Murphy gave him a small piece of paper upon which was written the license plate number HZM 478. Saunders also identified a photograph of the Granada, with the same license plate number.

Larry Jackson testified for defendant that on June 10, 1985, defendant was at Jackson's house at 1133 South Albany, one block from Kedzie, from noon until 2 p.m., when he left alone, saying he was going to the junkyard and then to his aunt's house at 95th and Union.

Defendant testified that on June 10, 1985, he left Jackson's home about 2 p.m. He was alone and was on his way to his aunt's house. In order to avoid rush hour traffic, because it was late in the afternoon, he took a different route than he otherwise might have taken. The front end of the car began shaking at about 92nd and Kedzie. He made a right turn onto 92nd Street and went down to 92nd and Spaulding, made a U-turn, drove up two blocks, and parked on the corner of 92nd and Kedzie. He denied seeing a dead end at Spaulding. After parking, defendant turned off the ignition, looked under the car, and walked around the front of it. He repeated this several times.

The bus stop was directly across the street, but defendant denied seeing any bus arrive. Defendant considered whether or not he should take a bus home. He went over to the bus stop to look at the bus schedule but did not find a schedule on the sign. "There was no bus coming," so he walked back to his car, looked under it again, entered the car, started the engine, and again exited the car and looked under it. About 10 to 20 seconds later, he heard the alarm on the van, but paid no attention to it. When the van passed him, he did not look at its occupants, and instead continued to look at his car.

Thirty seconds after the van passed him, defendant heard his name called by Hatch. Roberts and Hatch were walking from the direction of Spaulding and 92nd. Hatch and defendant had worked together briefly as security guards at a hospital for about one month. Defendant agreed to give them a ride.

Defendant drove away from the corner within 30 seconds of meeting Hatch and Roberts on the street. Defendant testified further that when he was on 92nd, he "backed up somewhat, but I never backed up any two blocks anywhere." Defendant did not see a gun in Hatch's possession; did not see either codefendant place a gun under the car seat; and denied having any involvement in an armed robbery. When he stopped for a red light at 95th and Kedzie, he was arrested.

■■ Defendant first contends that there was insufficient evidence of secretive confinement to find defendant guilty of aggravated kidnapping. Before aggravated kidnapping can be proved, the State must first establish that a kidnapping occurred. (*People v. Marin* (1971), 48 Ill. 2d 205, 269 N.E.2d 303.) Kidnapping occurs when an individual knowingly and secretly confines another person against that person's

will, or by force or threat of imminent force carries the person from one place to another with intent secretly to confine him against his will. (Ill. Rev. Stat. 1985, ch. 38, pars. 10—1(a)(1), (a)(2).) A kidnapper may secretly confine a victim in a moving automobile. (*People v. Canale* (1972), 52 Ill. 2d 107, 285 N.E.2d 133; *People v. Kittle* (1986), 140 Ill. App. 3d 951, 489 N.E.2d 481.) Defendant's intent need not be proved by any particular words, but instead may be inferred from the circumstances surrounding the commission of an act by defendant. *People v. Miller* (1978), 58 Ill. App. 3d 1019, 374 N.E.2d 1118.

■ Here, the evidence showed that defendants' conduct was directed toward the victim's secret confinement, despite the fact that they also had intentions to rob. Defendants told Moulton to get into the van, prevented her from making known her distress, repeatedly ordered her to lie down in back of the van, and Roberts instructed Hatch to sit on Moulton when she did not obey him immediately. This evidence was sufficient to establish the element of secret confinement.

Not every asportation or detention with accompanying movement, however, rises to the level of a kidnapping. (See *People v. Kittle* (1986), 140 Ill. App. 3d 951, 489 N.E.2d 481.) Defendant urges this court to follow a line of cases which holds that movements merely incidental to the commission of a rape, robbery, or similar offense do not constitute the separate crime of kidnapping. See *Government of the Virgin Islands v. Berry* (3rd Cir. 1979), 604 F.2d 221; *People v. Lombardi* (1967), 20 N.Y.2d 266, 282 N.Y.S.2d 519, 229 N.E.2d 206; *People v. Levy* (1965), 15 N.Y.2d 159, 256 N.Y.S.2d 793, 204 N.E.2d 842, *cert. denied* (1965), 381 U.S. 938, 14 L. Ed. 2d 701, 85 S. Ct. 1770; *People v. Smith* (1980), 91 Ill. App. 3d 523, 414 N.E.2d 1117; see generally Annot., 43 A.L.R.3d 699 (1972).

In *People v. Canale* our supreme court declined to decide whether to adopt the holdings of the New York cases which reversed convictions for aggravated kidnapping after finding that the confinement and asportation of the victims were merely incidental to the rape or robbery. The court in *Canale* stated that the rationale and purpose of the New York cases was to prevent, in an excess of prosecutorial zeal, the elevation of the lesser crimes of rape and robbery to the more serious crime of kidnapping. The *Canale* court was not required to determine whether such a rule of law should be followed in Illinois. Instead, it distinguished Illinois law, under which rape and robbery were not lesser offenses than aggravated kidnapping. See Ill. Rev. Stat. 1969, ch. 38, pars. 10—2(b)(2), 18—1(b), 11—1(c).

Defendant relies on *People v. Smith*. The court in *Smith* reasoned that the underlying rationale set forth in *Canale* no longer compels a

complete rejection of the *Levy-Lombardi* rule, because aggravated kidnapping is now a more serious offense than robbery. (See Ill. Rev. Stat. 1985, ch. 38, pars. 10—2(b)(2), 1005—8—1 (aggravated kidnapping is a Class 1 felony with a potential sentence of 4 to 15 years), pars. 18—1(b), 1005—8—1 (robbery is a Class 2 felony with a potential sentence of three to seven years).) Defendant here, however, was convicted of armed robbery, which is a more serious offense than aggravated kidnapping. See Ill. Rev. Stat. 1985, ch. 38, pars. 18—2(b), 1005—8—1 (armed robbery is a Class X felony with a possible sentence of 6 to 30 years). See *People v. Davis* (1982), 105 Ill. App. 3d 549, 433 N.E.2d 1376 (*Levy-Lombardi* rule discussed in *Smith* does not apply because there could be no enhancement where other offense is murder, which is a more serious offense than aggravated kidnapping).

Notwithstanding the nearly identical statutory sentences distinguishing both *Canale* and the present case, we also review the facts under the separate test which has been developed to determine whether defendants' conduct rose to the level of kidnapping. Illinois courts have signalled their recognition and acceptance of the test. For example, the *Canale* court discussed several of the factors in the test, including the duration of confinement and the distance the victim was moved. In addition, our court has referred to all four factors addressed in using the test. See, *e.g.*, *People v. Gully* (1986), 151 Ill. App. 3d 795, 502 N.E.2d 1091; *People v. Kittle* (1986), 140 Ill. App. 3d 951, 489 N.E.2d 481; *People v. Young* (1983), 115 Ill. App. 3d 455, 450 N.E.2d 947; *People v. Davis* (1982), 105 Ill. App. 3d 549, 433 N.E.2d 1376.

In 1979, the Third Circuit Court of Appeals reviewed the relevant law from New York, California and several other jurisdictions, and articulated a four-part test to determine whether a defendant's conduct rose to the level of a kidnapping. (*Government of the Virgin Islands v. Berry* (3rd Cir. 1979), 604 F.2d 221.) The four factors to consider include: (1) the duration of the detention or asportation; (2) whether the detention or asportation occurred during the commission of a separate offense; (3) whether the detention or asportation which occurred is inherent in the separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense. *Government of the Virgin Islands v. Berry* (3rd Cir. 1979), 604 F.2d 221.

In regard to the first factor, defendant argues that the "abduction could hardly have been more brief." The short time frame, however, was entirely the result of the victim's courage and the fortu-

itous circumstances which permitted her to escape through the side panel door and thereby trigger the alarm, and probably deterred defendants from recapturing her on the street. The escape negates the underlying value of the time factor in the four-part test, primarily because it is not known whether any other crime was contemplated or whether the victim would have been held for a lengthy period of time. See *People v. Kittle* (1986), 140 Ill. App. 3d 951, 489 N.E.2d 481.

Thus, we find that the time duration factor is not determinative here. The brevity of the asportation also does not preclude a kidnapping conviction. The movement was limited to the half block only because Moulton was able to escape. See, *e.g., People v. Stevenson* (1974), 10 Cal. 3d 652, 517 P.2d 820, 111 Cal. Rptr. 556 (upheld kidnapping and robbery despite the fact that victim was only transported several blocks), disapproved on other grounds in *People v. Pope* (1979), 23 Cal. 3d 412, 590 P.2d 859, 152 Cal. Rptr. 732; *People v. Chatfield* (Colo. 1980), 612 P.2d 516 (upheld kidnapping where bank robbers commandeered a woman at gunpoint and released her several blocks later).

The second factor, whether the detention or asportation occurred during the commission of a separate offense, also does not preclude a kidnapping conviction. Here, the commission of the armed robbery constituted an offense separate from the kidnapping. See *People v. Freeman* (1981), 101 Ill. App. 3d 1014, 428 N.E.2d 1073.

■ An analysis of the third factor, whether the detention or asportation which occurred is inherent in the separate offense, reveals that the abduction was unnecessary in order to accomplish the armed robbery.

Robbery demands nothing more than the taking of property from the person or presence of another by the use of force or by threatening the imminent use of force. (Ill. Rev. Stat. 1985, ch. 38, par. 18–1.) Defendants robbed Moulton when they threatened to kill her, forced her to deactivate the alarm, and took the van, its ignition keys, and all of its contents, including Moulton's purse, in the presence of Moulton. Robbery required no further acts. Defendants need not have, *e.g.*, ordered Moulton into the van, forced her to lie down on the floor, threatened to shoot her, or driven away from the location of the robbery with Moulton in the car. The detention and asportation which occurred was inherently separate from the offense of robbery. See *People v. Gully* (1986), 151 Ill. App. 3d 795, 502 N.E.2d 1091; *People v. Freeman* (1981), 101 Ill. App. 3d 1014, 428 N.E.2d 1073. *Cf. People v. Young* (1983), 115 Ill. App. 3d 455, 450 N.E.2d 947 (abduction and detention inherent in the accompanying rape itself since at some point

in time complainant had to be restrained in order to accomplish the rape).

The fourth factor asks whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense. Defendants forced Moulton out of the public area, which was visible to neighbors such as Murphy, to the back of a van, where it would be more difficult to signal a need for help. The likelihood of her being seen by a passerby who might help was greatly decreased. See *People v. Boyce* (1976), 41 Ill. App. 3d 53, 353 N.E.2d 287.

■ In addition, once the victim is confined within a moving vehicle, the possibility that an accident might occur or the victim might injure herself attempting to escape from a moving vehicle increases the risk of harm resulting from asportation. (See *In re Earley* (1975), 14 Cal. 3d 122, 534 P.2d 721, 120 Cal. Rptr. 881.) The chances of being transported to a more deserted spot also substantially increases the risk of harm above that present in robbery alone. (See, *e.g.*, *People v. Powell* (Colo. 1986), 716 P.2d 1096; *State v. Couch* (Utah 1981), 635 P.2d 89; *People v. Gully* (1986), 151 Ill. App. 3d 795, 502 N.E.2d 1901; *In re Lokey* (1974), 41 Cal. App. 3d 767, 116 Cal. Rptr. 299.) We conclude that forcing Moulton into the van and leaving the scene of the robbery triggered a potential risk of harm to Moulton which was substantially increased above that necessarily present in the crime of robbery itself. A review of the facts under this four-part test clearly indicates that the aggravated kidnapping was not merely incidental to the other offenses.

Defendant's heavy reliance on *People v. Smith* is misplaced. In *Smith*, the court found that the gist of the case was robbery, not kidnapping. Defendants took control of the victim's car, said they had robbed a bank and needed the car to get out of the immediate vicinity. Defendants told the victim that if he wrote down his name, address and telephone number, they would have the car returned to him. The victim did so, and this paper was found on one defendant when he was arrested. Defendants also asked the victim for his money, but he only had 60 cents. Defendants drove the victim's car for about 20 minutes, and then let him out of the car.

Defendant next contends that the State failed to prove possession of a weapon to support the offenses of armed robbery, armed violence and aggravated kidnapping beyond a reasonable doubt.

■ In the present case, Moulton observed Roberts' hand in his jacket pocket, which was drawn taut, as he threatened to kill her unless she continued walking to the van. In addition, Roberts specifically

threatened to shoot Moulton just before he drove the van out of the parking area. Pekarski's testimony also corroborates that of Moulton. He observed a handgun in the waistband of Hatch when he exited on the passenger side of the van. Further corroboration that a gun was present resulted from Officer O'Dowd's testimony that a handgun was found underneath the passenger's side of the front seat, where Hatch had been sitting. There is no support in the record for defendant's argument that the gun could have belonged to Moulton.

■ Defendant also maintains that Moulton's testimony was contradictory as to when she saw the gun. She testified clearly that Roberts was the man who had his hand in his jacket pocket which was pulled taut, and she twice stated that Roberts was the man whom she saw put the gun on the floor of the van. On cross-examination she stated that "[i]t was on the floor" when she first saw it. The trial court, as trier of fact, was in the best position to determine whether Moulton's testimony was credible on this point. Defendant argues that Moulton's credibility suffered substantially because she described the gun as being twice the size of the gun found in defendant's car. Moulton testified, however, that she lacked familiarity with handguns.

Defendant also contends that Pekarski's testimony was unreliable because he first misidentified defendant as the man with the gun and later said it was Hatch. Defendant's argument that a confusion as to identification of an individual raises doubt as to whether he saw a gun is unpersuasive.

■ Defendant next contends that the State failed to prove beyond a reasonable doubt that he was guilty of the charged offenses under a theory of accountability. A person is legally accountable for the conduct of another when, either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense. (Ill. Rev. Stat. 1985, ch. 38, par. 5—2(c).) Defendant's conduct subsequent to the offense may raise an inference of prior or concurrent participation. *People v. Grice* (1980), 87 Ill. App. 3d 187, 410 N.E.2d 209, *cert. denied* (1981), 450 U.S. 1003, 68 L. Ed. 2d 207, 101 S. Ct. 1714.

■ In the present case, the testimony clearly established that defendant waited at a bus stop, although he did not take the bus that stopped there. At precisely the same time the van approached defendant with its alarm sounding, he entered the car, started the engine, and drove in reverse around the corner and down the same street into which the van had turned, and picked up the two codefendants as they fled from the van. The testimony of Murphy and Pekarski

strongly supported defendant's conviction under a theory of accountability. We agree with the trial court that there was overwhelming evidence of defendant's participation. See *People v. Bartlett* (1980), 91 Ill. App. 3d 138, 414 N.E.2d 253.

Defendant attacks Pekarski's testimony regarding the car travelling in reverse on the basis that he initially erred in identifying defendant as the man with the gun in the van. Accurately identifying a face is considerably more difficult than accurately reporting a car driving down the street in reverse and picking up two men who exited the van.

■■ Defendant next contends that the evidence failed to prove that defendants, by use of force and by threatening imminent use of force while armed with a dangerous weapon, took the truck and its contents from the person and presence of Moulton. An essential element of the offense of robbery is that the victim be deprived of some property through the perpetrator's actions. (*People v. Robinson* (1981), 92 Ill. App. 3d 397, 416 N.E.2d 65.) It is sufficient to show that defendants took full and complete possession of the property when they acquired exclusive power to control it. (*People v. Smith* (1971), 132 Ill. App. 2d 657, 270 N.E.2d 136 (abstract of opinion).) Moulton was deprived of all control over the van. Defendant's argument that Moulton voluntarily deprived herself of possession by jumping out of the van is absurd. Moulton's escape signals nothing more than an interest in protecting her own life and safety.

Defendant contends further that the same activity is the basis for both the armed robbery and theft convictions, and thus the theft conviction must merge with the armed robbery conviction. *People v. Tucker* (1977), 48 Ill. App. 3d 254, 362 N.E.2d 468; *People v. Broadnax* (1974), 23 Ill. App. 3d 68, 318 N.E.2d 499.

■■ More than one offense may not be carved from the same physical act. (*People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.) Multiple convictions and concurrent sentences are permitted, however, where a defendant committed several acts, despite the interrelationship of the acts. (*People v. Myers* (1981), 85 Ill. 2d 281, 426 N.E.2d 535, citing *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.) Because the armed robbery and theft convictions here were founded on a single act of defendants' taking the van and its contents, the judgment finding defendant guilty of theft must be vacated.

Finally, defendant argues that the court abused its discretion in sentencing him to a term of 30 years for armed robbery, 30 years for armed violence, 15 years for aggravated kidnapping, and five years

for theft. A trial court's decision with respect to sentencing is entitled to great deference and weight. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344.) Absent an abuse of discretion, the sentence will not be altered. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

■■ Here, the court properly considered the violence threatened and the potential for great bodily harm. (See *People v. Morgan* (1974), 59 Ill. 2d 276, 319 N.E.2d 764; see also Ill. Rev. Stat. 1985, par. 1005—5—3.2(a)(1).) The trial court properly considered factors both in mitigation and aggravation, including defendant's extensive history of past criminal conduct, such as convictions for rape, armed robbery and burglary, and several prison terms. We find no abuse of its discretion in the sentencing.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed as to the convictions for armed robbery, armed violence and aggravated kidnapping; and vacated as to the conviction for theft.

Judgment affirmed in part, vacated in part.

RIZZI and FREEMAN, JJ., concur.