THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
TYSHUN LLOYD, Defendant-Appellant.

First District (1st Division)   No. 1—94—2073

Opinion filed December 18, 1995.

Rita A. Fry, Public Defender, of Chicago (Andrea Monsees, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Margaret M. Regan, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Following a bench trial, defendant, Tyshun Lloyd was convicted of four counts of aggravated criminal sexual assault and sentenced to an aggregate term of 42 years' imprisonment. On appeal, defendant contends that: (1) he was not proved guilty beyond a reasonable doubt; (2) the trial court improperly admitted the statement of the complainant through the testimony of her boyfriend; (3) the trial court relied upon the inadmissible hearsay testimony of two co-offenders; (4) his convictions should be reduced to criminal sexual assault; and (5) his sentence is excessive. For the following reasons, we affirm.

The record reveals the following relevant facts. On September 15, 1991, at approximately 3 a.m., the complainant, J.J., was sexually assaulted by five young men in an abandoned building located at 1358 South Throop Street.[1] On September 19, 1991, at 2 a.m., police arrested defendant at his home.

---

[1] The record shows that co-offenders Michael Lloyd and Christopher Gavin were each convicted of criminal sexual assault in juvenile court on February 2, 1993, and February 8, 1993, respectively, and the trial judge

Prior to trial, the trial court denied defendant's motion to suppress his statement, finding that he voluntarily waived his *Miranda* rights.

At trial, Chicago police detective William Wright testified that he interviewed J.J. at the police station on September 19, 1991 at 3:45 a.m. At 7:15 a.m., Detective Wright interviewed defendant, in the presence of an assistant State's Attorney. Defendant made a statement, which was reduced to writing. Defendant read the statement aloud, then signed the statement. Although defendant was 15 years old at the time of his arrest, Detective Wright thought that defendant was 16 years old. Defendant's statement shows that he is 16 years old.

Defendant's statement indicates that he is a member of the Black Gangster Disciple street gang and that co-offender "Mac" is a member of the Vice Lord street gang. Defendant's statement also implicates co-offenders Christopher Gavin, also known as "Fatman"; and defendant's brother, Michael Lloyd.

Defendant stated that on September 15, 1991, at approximately 3 a.m., he and Mac saw J.J. walking down the street. They grabbed her and brought her to an abandoned building at 1358 South Throop. Christopher Gavin, Michael Lloyd and two other individuals followed them. Once upstairs, Mac forced J.J. to suck his penis, as did Gavin, defendant, Michael Lloyd, and the other two men. Then, everyone except defendant had vaginal intercourse with J.J.

Afterward, everyone left and Mac, Michael Lloyd and J.J. got into a red and white Chevrolet and drove to a nearby vacant lot where J.J. was again forced to have oral sex with Mac. At this time, defendant stated he was sitting at 1360 Throop when Mac drove up with J.J. and Michael Lloyd. They told defendant to go to J.J.'s house so they could take her television, video cassette recorder, and other things. Defendant followed them. Once at J.J.'s building, Mac looped a belt around J.J.'s neck, tightened the belt, and took her in the elevator to her third-floor apartment. Defendant stated that there were at least four other young men with them. Mac held onto J.J. with the belt, while the others walked behind J.J. J.J. knocked on the door and a man answered so Mac tried to pull J.J. to the ground. Michael Lloyd then hit J.J. with a broken wine bottle in her face. J.J. called out to her boyfriend, and defendant and the others ran. Defendant ran to 1360 Throop and sat on the porch. Mac and Michael Lloyd drove to 1360 Throop and then left.

---

sentenced each of them to probation. The record does not disclose any information regarding the disposition of the cases, if any, against the other two offenders.

Cook County Hospital Emergency Room Nurse Katherine Buckley testified that she treated J.J. at approximately 5 p.m. on September 15, 1991. J.J. stated that she had been sexually assaulted and hit by five men at 2 a.m. that day. Nurse Buckley observed that J.J. sustained a superficial laceration to the side of her head and that her clothes were untidy. Nurse Buckley did not notice that J.J. had any redness on her neck, but did observe some swelling above the cut at her eye area.

Jerome Streeter testified that he is J.J.'s boyfriend. At the time of the incident, Streeter resided with J.J. and their two children in an apartment located in the Ida B. Wells housing project at 1341 West 15th Street. On September 14, 1991, Streeter was "panhandling" until approximately midnight. J.J. was at home when he returned, then left the apartment at 2 a.m. to get beer from a 24-hour store. Streeter fell asleep.

At approximately 3 a.m., Streeter awakened to the sound of voices in the hallway. Streeter heard J.J. shout out his name, and he jumped up and ran toward the door. Streeter then heard a bottle crack. When he opened the door, he saw J.J., with a belt tied around her neck. A man stood behind J.J. holding the belt and ran toward the north corridor when he saw Streeter. J.J. was bleeding from her head.

Streeter ran down the north corridor after the man and saw him exit the building and enter into the passenger side of a dark automobile with a white top. Streeter observed several individuals in the back seat of the automobile, in addition to the driver.

When he returned to the apartment, he noticed J.J.'s hair standing on end and the belt still around her neck. J.J. removed the belt and was crying. Streeter asked J.J. what happened, and she responded that she had been raped. Streeter noticed that J.J.'s clothes were dirty and that she had mud on her knees. Streeter looked at the belt and noticed that it was a man's size 34.

Streeter stated that J.J. sat "dazed" at the kitchen table for hours. Streeter asked J.J. to call the police five or six times. Streeter left the apartment at 7:30 a.m.

On cross-examination, Streeter admitted that he did not call the police or an ambulance for J.J. Streeter stated that he went to bed at approximately 5 a.m., prior to leaving the apartment at 7:30 a.m. Streeter did not chase after the individuals in the car he saw outside.

Streeter returned to the apartment between 3 and 4 p.m., where he encountered the police. He gave his name to the police but did not give the officers any information, nor did he accompany J.J. to the hospital or to the police station.

Chicago police officer Alan Mercado testified that on September

15, 1991, at 4 p.m., he and his partner, Officer Maldonado, interviewed J.J at her apartment. Officer Mercado noticed broken glass in the courtway en route to J.J.'s apartment. Once inside, the officer noticed that J.J.'s clothing was a little soiled and that she had a fresh cut on the left side of her face. J.J. stated that she had been raped, and the officers drove her to the scene of the offense, an abandoned apartment building located at 1358 South Throop. The officers accompanied J.J. to an apartment house next door and gleaned information from three female witnesses. The officers then transported J.J. to Cook County Hospital. After J.J. was treated, the officers returned J.J. to her apartment.

Christopher Gavin testified that he is 16 years old and has known the defendant for the duration of his life. Gavin stated that he pled guilty in juvenile court to the offense of criminal sexual assault upon J.J., was convicted, and received probation.

Gavin stated that he had no recollection of the events occurring at 2 a.m. on September 15, 1991, or of the incident of his arrest on September 19, 1991. Nevertheless, Gavin recognized his own signed statement, given on September 19, 1991. He admitted that his nickname is "Fatman."

Gavin's statement was presented as evidence. Therein, Gavin stated that he saw defendant approach J.J. and bring her to a vacant rowhouse at 1358 South Throop. Gavin further stated that defendant had sexual intercourse with J.J. Gavin stated that he did not have sexual intercourse with J.J., but that he was present when the others had sexual intercourse with J.J., and that he acted as a lookout. Gavin also stated that defendant placed J.J. in a red and white car, and then told Michael Lloyd and Gavin to follow them to J.J.'s apartment. Once there, Gavin heard defendant tell Michael, "Give me the glass." Gavin then heard the bottle break.

Michael Lloyd, defendant's younger brother, then testified that he is 16 years old. He admitted that he knows Gavin. In 1989, Michael was convicted for possession of a stolen motor vehicle in juvenile court and released. Michael admitted that he currently has a burglary case pending against him in juvenile court. Michael denied any knowledge of the events occurring on September 15, 1991, and the subsequent criminal proceedings against him. Michael further failed to identify as his own a signature on a statement dated September 19, 1991, and denied talking to police. However, he admitted to pleading guilty to the criminal sexual assault of J.J. and to receiving a sentence of probation.

Michael's statement was presented as evidence. Therein, Michael stated that he was 14 years old at the time of the incident. Michael

also stated that he saw defendant approach J.J. and then bring her to the vacant rowhouse. Michael stated that defendant had sexual intercourse with J.J., while he awaited his turn. Afterward, defendant and Mac took J.J. in a red and white car to J.J.'s apartment. Michael and Gavin followed them on foot.

The parties stipulated to the testimony of Christine Braun, an expert in forensic serology at the Chicago Police Department Crime Lab, who would testify that she examined a specimen taken from the vaginal area of J.J. and found it positive for the presence of spermatozoa and semen.

Assistant State's Attorney Patti Sudendorf testified that she interviewed J.J. on September 19, 1991, at approximately 10 p.m. Sudendorf then interviewed Michael Lloyd and reduced his statement to writing. Michael made corrections to and signed the statement. Sudendorf also interviewed Gavin, who made and signed a written statement. The statements of Michael Lloyd and Gavin were received into evidence.

At the conclusion of the trial, the trial court found that Christopher Gavin and Michael Lloyd were not credible witnesses and that "[t]hey were clearly testifying falsely with the intention of assisting Mr. Lloyd." The trial court noted that Gavin and Michael Lloyd "took full advantage of their opportunity to fabricate with the passage of time."

The trial court found defendant guilty as to all counts. Following a hearing, the trial court imposed no judgment and sentence on counts V through X of defendant's indictment, and sentenced defendant on counts I through IV for aggravated criminal sexual assault. The trial court sentenced defendant as follows: 24 years' imprisonment on count I, to be followed by three years' mandatory supervised release; six years' imprisonment for each count II, III, and IV, plus three years' mandatory supervised release, to be served consecutively. The trial court stated:

> "With my regret and I can see no other interpretation of the statute, that is reasonable. I'm duty bound to make them consecutive to Count 1 and consecutive to each other. So that the sentence would be 42 years in the Illinois Department of Corrections aggregate.
>
> I do so because of the fact that I'm bound to follow the statute. I think that this is too much of a sentence for the defendant, when his sentences have to be consecutive to each other. I say that quite frankly, it is too much, but I have to follow the statute."

Defendant's timely appeal followed.

Initially, defendant contends that the State failed to prove the

*corpus delicti* of the crimes of aggravated criminal sexual assault and kidnapping and therefore did not prove him guilty beyond a reasonable doubt. Defendant argues that the State presented no competent evidence other than defendant's confession and that the *corpus delicti* was not proven because J.J. failed to testify to the essential elements of the crimes.

■ Proof of *corpus delicti* requires both proof that a crime was committed and that it was committed by the person charged. (*People v. Lambert* (1984), 104 Ill. 2d 375, 378, 472 N.E.2d 427.) However, the *corpus delicti* cannot be proved by the defendant's confession alone. There must be either some independent evidence or corroborating evidence outside of the confession which tends to establish that a crime occurred. If there is such evidence, and that evidence tends to prove that the offense occurred, then that evidence, if it corroborates the facts contained in the defendant's confession, may be considered together with the confession to establish the *corpus delicti*. *Lambert*, 104 Ill. 2d at 379.

In the present case, proof of the *corpus delicti* of aggravated criminal sexual assault requires both evidence of criminal sexual assault, or an act of sexual penetration by the use of force or threat (720 ILCS 5/12—13(a)(1) (West 1992)), and evidence of kidnapping, since the criminal sexual assault is aggravated by the fact that it was perpetrated during the course of the felony of kidnapping. Kidnapping occurs when a person knowingly and secretly confines another against his will or by force or threat of imminent force carries another from one place to another with intent secretly to confine him against his will. 720 ILCS 5/10—1 (West 1992).

■ The record reveals sufficient evidence independent of defendant's confession to prove the *corpus delicti* of aggravated criminal sexual assault. Defendant's statement reveals that he grabbed J.J. off the street and took her to an abandoned building. Police officer Mercado testified that he interviewed J.J. after the incident, who told him she was taken to an abandoned building, that he searched the abandoned building, and that he interviewed witnesses in the vicinity. Jerome Streeter testified as to J.J.'s physical and emotional condition after the incident, including finding her with an injury to her head and a belt wrapped tightly around her neck. Although Gavin and Michael Lloyd denied any knowledge of the incident, police and an assistant State's Attorney testified that they were present at the time Gavin and Lloyd made their statements and the statements, incriminating the defendant, were admitted into evidence.

The authority cited by defendant in support of his contention is distinguishable and therefore not persuasive. Defendant's further

argument that the State was required to have J.J. testify is unavailing. See *People v. Nowak* (1970), 45 Ill. 2d 158, 168, 258 N.E.2d 313; *People v. Boclair* (1992), 225 Ill. App. 3d 331, 338, 587 N.E.2d 1221 (State need not call all of the witnesses to a crime in proving its case).

The record therefore reveals sufficient evidence that defendant committed the crime of aggravated criminal sexual assault against J.J.

Defendant further contends that the trial court improperly admitted the statements of Gavin and Michael Lloyd under section 115—10.1 of the Code of Criminal Procedure of 1963. (725 ILCS 5/115—10.1 (West 1992).) Defendant argues that admission of the witnesses' statements violated his constitutional due process rights to confront and cross-examine witnesses.

Under section 115—10.1, the otherwise inadmissible prior inconsistent hearsay statement of a witness is admissible as substantive evidence at trial where the witness: is subject to cross-examination concerning the statement; the statement narrates, describes or explains an event of which the witness had personal knowledge; and the statement is proved to have been written or signed by the witness. 725 ILCS 5/115—10.1 (West 1992).

■ In the present case, the written statements of Gavin and Michael Lloyd were admissible by the criteria set forth in section 115—10.1. At trial, both Gavin and Michael Lloyd denied any knowledge of the sexual assault of J.J., yet each admitted that he pled guilty to the offense in juvenile court, was convicted, and sentenced to probation. Gavin's and Lloyd's prior written statements to police confessing the offense were therefore inconsistent with each witness' testimony at trial. Each statement narrated, described and explained the assault upon J.J. in detail.

In addition, Gavin and Michael Lloyd were both subject to cross-examination. The record shows that defense counsel cross-examined Gavin. However, at the conclusion of Michael Lloyd's direct examination, defense counsel stated: "No cross." The confrontation clause of the sixth amendment to the United States Constitution guarantees only " 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " (*People v. Dixon* (1993), 256 Ill. App. 3d 771, 778, 628 N.E.2d 399, quoting *United States v. Owens* (1988), 484 U.S. 554, 559, 98 L. Ed. 2d 951, 957-58, 108 S. Ct. 838, 842.) As defendant had the opportunity to cross-examine both Gavin and Michael Lloyd, his right to confront witnesses was not violated.

We therefore find that the trial court properly admitted the prior

inconsistent statements of Gavin and Michael Lloyd as substantive evidence, and that the evidence at trial was sufficient to prove defendant guilty of the offense beyond a reasonable doubt.

Next, defendant contends that the trial court impermissibly allowed Jerome Streeter to testify that J.J. told him that she had been raped. Defendant argues that Streeter's improper hearsay testimony is not admissible under the corroborative complaint exception to the hearsay rule, which permits testimony indicating that a prompt complaint of a sexual assault was made. *People v. Garrett* (1994), 264 Ill. App. 3d 1089, 637 N.E.2d 615.

The record shows the following exchange during Streeter's direct examination:

> "PROSECUTOR: Did you ask her what had happened to her?
> WITNESS: Yeah I asked her what happened.
> PROSECUTOR: What did she say?
> DEFENSE COUNSEL: Objection.
> WITNESS: She said she's been raped.
> THE COURT: Grounds.
> DEFENSE COUNSEL: Hearsay.
> THE COURT: Overruled. Outcry."

The record therefore shows that the trial court did not admit Streeter's testimony under the corroborative complaint exception to the hearsay rule.

The State responds that the testimony is admissible under the spontaneous declaration exception to the hearsay rule. Although the State did not argue at trial that the testimony was a spontaneous declaration, we note that an appellee may assert any argument to sustain a judgment as long as that argument is supported by the record. *People v. Hamm* (1992), 149 Ill. 2d 201, 595 N.E.2d 540.

The requirements for admissibility under the spontaneous declaration exception are: (1) the occurrence of an event sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) a statement relating to the circumstances of the occurrence. (*People v. Gacho* (1988), 122 Ill. 2d 221, 241, 522 N.E.2d 1146; *People v. Poland* (1961), 22 Ill. 2d 175, 181, 174 N.E.2d 804.) Factors used to determine whether the declarant's statement was in fact spontaneous include: time, the nature of the event, the mental and physical condition of the declarant, and the presence or absence of self interest. (*People v. House* (1990), 141 Ill. 2d 323, 381-82, 566 N.E.2d 259.) The trial court has considerable discretion in determining whether a statement is admissible as a spontaneous declaration and will not be reversed absent an abuse of that discretion. *People v. James* (1990), 200 Ill. App. 3d 380, 388-89, 558 N.E.2d 732.

■ In the present case, J.J.'s statement to Streeter that she was raped relates the occurrence of an event sufficiently startling to produce a spontaneous and unreflecting statement. Second, the record shows an absence of time for J.J. to fabricate: she left the apartment at 2 a.m. and returned at 3 a.m., injured, and with a belt wrapped tightly around her neck. Streeter stated that J.J.'s clothes were dirty and that she was dazed and crying. Finally, J.J's statement that she was raped relates precisely to the circumstances of the occurrence.

Under the circumstances, the trial court properly admitted Streeter's testimony.

Next, defendant contends that his convictions should be reduced to criminal sexual assault. Defendant argues that the State failed to prove that the detention or "asportation" element of kidnapping was not merely incidental to the alleged sexual assaults and was in fact an independent offense during which the alleged assaults occurred.

The record shows that defendant was charged with, *inter alia*, 10 counts of aggravated criminal sexual assault, including aggravated kidnapping and kidnapping, which were nol-prossed by the State prior to trial. The charges remaining against defendant provided in pertinent part that he:

> "committed the offense of aggravated criminal sexual assault *** by the use of force and by the threat of force, and the criminal sexual assault was perpetrated during the course of the commission of the felony of kidnapping."

Kidnapping occurs when a person knowingly and secretly confines another against his will or by force or threat of imminent force carries another from one place to another with intent secretly to confine him against his will. 720 ILCS 5/10—1 (West 1992).

In Illinois, reviewing courts have addressed the necessary proof to establish the "secret confinement" element of the charged offense. In general, the victim has clearly been "confined" or enclosed within something, such as a house or a car. See *People v. Mulcahey* (the victim was bound to a chair in her own home); *People v. Bishop* (1953), 1 Ill. 2d 60, 114 N.E.2d 566, (secret confinement in an automobile while it is in motion upon a highway).

To determine whether an asportation or detention rises to the level of kidnapping as a separate offense, Illinois courts have adopted the test established in *People v. Smith* (1980), 91 Ill. App. 3d 523, 414 N.E.2d 1117. The *Smith* test requires consideration of the following four factors: (1) the duration of the asportation or detention, (2) whether the asportation or detention occurred during the commission of a separate offense, (3) whether the asportation or detention that occurred is inherent in the separate offense, and (4) whether the

asportation or detention created a significant danger to the victim independent of that posed by the separate offense. *Smith*, 91 Ill. App. 3d at 529, 414 N.E.2d at 1122.

■ Whether an asportation is sufficient to constitute a kidnapping depends on the particular facts and circumstances of each case. (*People v. Casiano* (1991), 212 Ill. App. 3d 680, 571 N.E.2d 742.) There, in *Casiano*, the defendant grabbed the complainant on the street and forced her to walk with him at knife point 1¹/₂ blocks to his apartment. Once there, the defendant threatened to kill the complainant and then raped her. This court held that the kidnapping based on asportation was a separate offense and not merely incidental to the aggravated criminal sexual assault.

In the present case, the duration factor is satisfied where the detention lasted approximately one block; J.J. was taken by force from the street in front of her apartment building, located at 1341 West 15th Street, to the abandoned building at 1358 South Throop Street. Neither the brevity of the asportation nor the limited distance of the movement necessarily precludes a kidnapping conviction. *People v. Riley* (1991), 219 Ill. App. 3d 482, 579 N.E.2d 1008; *People v. Thomas* (1987), 163 Ill. App. 3d 670, 678, 516 N.E.2d 901 (kidnapping established where the victim was transported only half a block in a van and then was able to escape through a side panel door); *People v. Pugh* (1987), 162 Ill. App. 3d 1030, 516 N.E.2d 396 (kidnapping found where asportation lasted only a few minutes).

Second, the asportation of J.J. occurred prior to, rather than during, the sexual assault. (See *People v. Gully* (1986), 151 Ill. App. 3d 795, 502 N.E.2d 1091.) In *Gully* the court found that the kidnapping constituted a separate offense where the victim was robbed, then transported in a car to a different location, and then raped.

Third, the forced movement of a victim from one location to another place is not inherent in the offense of criminal sexual assault. 720 ILCS 5/12—13 (West 1992).

Fourth, the asportation created a significant danger to J.J. independent of the danger posed by the sexual assault. The danger arises from the movement itself where J.J. was grabbed from behind, threatened, and forced to walk in this manner. (See *Riley*, 219 Ill. App. 3d at 489; *Casiano*, 212 Ill. App. 3d at 688.) In addition, a significant danger arises from the potential of more serious criminal activity due to the privacy of the final location, the abandoned apartment building in the present case. Specifically, a significant and independent danger arises where a victim is forced out of a public area and into an abandoned apartment because as a result of the asportation, a victim's signal for help is more difficult to detect and the likelihood

of a victim being seen by a passerby is greatly decreased. *Riley*, 219 Ill. App. 3d at 490; *Thomas*, 163 Ill. App. 3d at 679.

The record therefore shows that the kidnapping was not merely incidental to the sexual assault and, therefore, does not support a reduction of defendant's sentence.

Finally, defendant contends that his sentence is excessive. Defendant argues that the trial court mistakenly believed that it did not have the discretion to impose concurrent sentences upon defendant for his four convictions. Defendant further argues that the trial court failed to consider factors in mitigation.

In support, defendant relies upon *People v. Neither* (1992), 230 Ill. App. 3d 546, 595 N.E.2d 124. There, codefendants were convicted of four purse-snatching robberies of elderly victims and sentenced to consecutive extended terms of imprisonment aggregating 71 years. Two of the robberies resulted in physical injury.

On appeal, this court noted that the offense of robbery is a Class 2 felony with a sentencing range of three to seven years (720 ILCS 5/18—1 (West 1992)); however, if the victim is 60 years of age or over, robbery is a Class 1 felony, punishable by a term of 4 to 15 years (730 ILCS 5/5—8—1(4) (West 1992)). To extend the sentence imposed on a Class 1 felony up to 30 years, the trial court is required to find the presence of such factors in aggravation as the age of the victim and that the offense is accompanied by "exceptionally brutal or heinous behavior indicative of wanton cruelty." 730 ILCS 5/5—5—3.2(b)(2), (b)(4)(ii).

The *Neither* court reduced the defendants' sentences to 15 years' concurrent imprisonment, finding that the average sentence for Class 1 felonies (*i.e.*, robbery, upgraded from a Class 2 felony because the victim was aged 60 or over) was slightly over 6 years and that the longest sentences were 15 years. (*Neither*, 230 Ill. App. 3d at 551.) This court also vacated two of the trial court's imposition of two extended-term sentences for the robberies of the two women over 60 who sustained injuries, finding that the two crimes were not exceptionally brutal and heinous because the defendants were unarmed and did not exhibit conduct "indicative of a brutal desire to inflict gratuitous pain or to torture the victims." *Neither*, 230 Ill. App. 3d at 553.

█ *Neither* is distinguishable. In the present case, defendant was convicted of four counts of aggravated criminal sexual assault, in violation of section 12—14 of the Criminal Code of 1961 (720 ILCS 5/12—14 (West 1992).) Each conviction carries a minimum sentence of 6 years and a maximum sentence of 30 years. (720 ILCS 5/12—14; 730 ILCS 5/5—8—1 (West 1992).) Defendant is subjected to manda-

tory consecutive sentences by statute. (730 ILCS 5/5—8—4(a) (West 1992); *People v. Wittenmyer* (1992), 151 Ill. 2d 175, 195-96, 601 N.E.2d 735.) In the present case, the trial court sentenced defendant to 24 years for count I, and three consecutive terms of 6 years for counts II, III, and IV, the statutory minimum for each count. The trial court entered no judgment and imposed no sentence on defendant's counts V through X.

The trial court's decisions regarding sentencing are given great weight and deference. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882, 884; *People v. La Pointe* (1981), 88 Ill. 2d 482, 492-93, 431 N.E.2d 344.) It is well established that the imposition of a sentence is a matter of judicial discretion and that absent an abuse of that discretion, the sentence as determined by the trial court should stand. *Perruquet*, 68 Ill. 2d at 153, 368 N.E.2d at 884.

In sentencing a defendant, the trial court may consider the gravity and circumstances of the offense, as well as defendant's mental capacity, age, demeanor and credibility. (E.g., *Perruquet*, 68 Ill. 2d at 154, 368 N.E.2d at 884.) Furthermore, the trial court must balance the objectives of protecting society and rehabilitating the defendant. (See *People v. Harris* (1989), 187 Ill. App. 3d 832, 844, 543 N.E.2d 859, 866.) A reviewing court will hesitate to upset this balance, especially where the sentence falls within the statutory limitation. *People v. Lambrechts* (1977), 69 Ill. 2d 544, 559, 372 N.E.2d 641, 649.

The record shows that in determining defendant's sentence, the trial court properly considered factors in mitigation. In aggravation, the trial court considered *inter alia*, that defendant had a lengthy criminal history, including approximately 20 prior arrests. Under the circumstances, we find defendant's sentence proper.

For the reasons stated above, we therefore affirm the judgment of the trial court.

Affirmed.

BUCKLEY and WOLFSON, JJ., concur.